860 P.2d 748

**In Re The Judicial Examination, Approval, And Confirmation Of The Contracts Between The United States Bureau Of Reclamation And The San Juan Water Commission For The Purchase Of Water Dated June 30, 1986 And January 8, 1990.**

**SAN JUAN WATER COMMISSION, Petitioner–Appellee,**

v.

**The TAXPAYERS AND WATER USERS OF SAN JUAN COUNTY And Unknown Claimants In Interest,**

**Animas River Agricultural Water Users Association, And Jack Scott, Individually, Respondents–Appellants.**

**No. 20224.**

Supreme Court of New Mexico.

Sept. 13, 1993.

Neil C. Stillinger, Vickie L. Gabin, Santa Fe, for respondents-appellants.

Sheehan, Sheehan & Stelzner, P.A., Charles T. DuMars, Robert P. Warburton, Albuquerque, for petitioner-appellee.

## OPINION

FROST, Justice.

This matter comes before us on appeal from an order granting summary judgment in favor of the Petitioner-Appellee and against the Respondents-Appellants. We affirm the district court's decision.

## FACTS

The San Juan Water Commission (Commission) filed a petition for judicial confirmation of two contracts with the United States Bureau of Reclamation (BOR). The Commission is comprised of San Juan County, the municipalities of Aztec, Bloomfield, and Farmington, and the San Juan Rural Water Users Association. The San Juan Rural Water Users Association is comprised of ten community water users associations, and each is a nonprofit corporation organized under the Sanitary Projects Act, NMSA1978, Sections 3-29-1 to -19 (Repl.Pamp.1991). In its petition, the Commission named various parties as respondents, including the Animas River Agricultural Water Users Association (Association).

The contracts involved the initial phases for the construction of the Animas-La Plata Water Project. The Association opposed the contracts principally on the grounds of lack of consideration, lack of capacity to contract with the BOR, and lack of subject matter jurisdiction. On cross-motions for summary judgment, the trial court ruled in favor of the Commission and confirmed the contracts. The trial court also denied the Association's motion to join other allegedly necessary parties.

## ISSUES

The Commission initially filed its petition for judicial confirmation under NMSA 1978, Section 3-27-6 (Repl.Pamp.1991), but then sought jurisdiction on alternative grounds under the Declaratory Judgment Act, NMSA 1978, Sections 44-6-1 to -15. The Association claims that the trial court lacked subject matter jurisdiction under either Section 3-27-6 or the Declaratory Judgment Act. Although it admits that the Commission complied with the statutory provisions of Section 3-27-6, the Association claims that jurisdiction cannot be based on that statute because the Commission is neither a city nor a county. It also argues that the Commission never specifically pleaded jurisdiction under the Declaratory Judgment Act and never formally amended or refiled its pleadings to conform

with the evidence under SCRA 1986, 1-015 (Repl.Pamp.1992). Thus, the Association claims that the trial court erred in finding that the Commission invoked jurisdiction on alternative grounds in seeking a declaration as to the validity of the contracts.

The Association also argues that the Commission failed to join necessary and indispensable parties under SCRA 1986, 1-019(A) (Repl.Pamp.1992). The Association insists that all taxpayers, water users, and unknown interested claimants in San Juan County should have been made parties to this action. Thus, according to the Association, the trial court lacked jurisdiction to enter a final decree in the absence of all interested parties.

In addition, the Association claims that the Commission had no authority to contract with BOR, principally because the individual members of the Commission each failed to pass an ordinance authorizing the contracts. It also argues that San Juan County may not fund the project with ad valorem taxes. Last, the Association claims that summary judgment was an improper remedy because factual issues were in dispute as to whether the BOR had unappropriated water available to fulfill its obligations under the contracts. The Association views the dispute over the availability of water a failure of consideration, which invalidates the contracts.

## DISCUSSION

### Subject Matter Jurisdiction

■ The Association's argument that the Commission failed to formally plead its action under the Declaratory Judgment Act has no merit. The Association does not claim that the Commission's petition was not a proper subject for declaratory judgment; rather, it argues that the Commission never formally requested relief under the Declaratory Judgment Act.

Initially, the Commission sought to invoke the district court's jurisdiction under Section 3-27-6 and NMSA 1978, Section 4-37-1 (Repl.Pamp.1992). Section 3-27-6 provides for judicial examination, approval,

and confirmation of contracts entered into by municipalities to acquire and operate water facilities. Section 4–37–1 grants counties the same powers as municipalities. Because the Commission itself is neither a municipality nor a county, it invoked alternative grounds for jurisdiction seeking a declaration of the validity of the contracts. The trial court amended the Commission's pleadings pursuant to Rule 15 to denote that it had jurisdiction under the Declaratory Judgment Act.

A trial court may in its discretion conform the pleadings to the evidence. SCRA 1986, 1–015(B) (Repl.Pamp.1992). Because the Commission failed to specifically plead jurisdiction under the Act, the issue is whether the Association would be prejudiced by an implied amendment and whether it had a fair opportunity to litigate the issue concerning the declaratory relief. *See Wynne v. Pino*, 78 N.M. 520, 523, 433 P.2d 499, 502 (1967).

■ Although it may never have actually mentioned the Declaratory Judgment Act in its pleadings, the Commission did request a declaration of the validity of the contracts in its prayer for relief. In addition, the Association does not claim that it was prejudiced by any failure to formally plead declaratory relief, and it appears that the Association was not prejudiced because it was fully aware that the Commission sought a declaration of the validity of the contracts. In fact, the Association itself requested a declaration that the contracts were invalid in its motion for summary judgment. When issues not specifically raised in the pleadings are litigated with either the express or implied consent of the parties, the issues are treated as if they had been set forth in the pleadings. *Page & Wirtz Constr. Co. v. Solomon*, 110 N.M. 206, 208–09, 794 P.2d 349, 351–52 (1990).

In addition, the Association seems to argue that the trial court had no jurisdiction under the Declaratory Judgment Act because the Commission failed to perfect service of process. The Association points out that SCRA 1986, 1–057 (Repl.Pamp.1992) requires that the other rules of civil procedure be followed and that the Commission

failed to comply with SCRA 1986, 1–004 (Repl.Pamp.1992) regarding service of process. As the Commission notes, however, although the Association claims lack of service of process, it made a general appearance in the district court thereby subjecting itself to personal jurisdiction. In addition, the Association waived any defense regarding personal jurisdiction because it failed to raise that defense in the trial court. *See* SCRA 1986, 1–012(H)(1)(b) (Repl. Pamp.1992). So, the trial court did not abuse its discretion under Rule 15 by conforming the pleadings to the evidence, and thus it had subject matter jurisdiction under the Declaratory Judgment Act.

### *Joinder of Parties*

■ The Commission claims that although other parties might have standing to contest the contracts, that does not make them necessary parties in this action under Rule 19. The Association argues that because other parties were subject to process, they were necessary parties and should have been joined under Rule 19(A). Thus, the Association seems to argue that because other taxpayers had standing to challenge the validity of the contract, they had to be joined in this action. In support of its argument, the Association raised the possibility of multiple lawsuits relitigating the same issues.

Rule 19, however, does not require joinder of every taxpayer or citizen in the area, and neither does Section 44–6–12 of the Declaratory Judgment Act. The Declaratory Judgment Act was intended to be liberally construed and administered as a remedial measure. Section 44–6–14. Requiring the joinder of every citizen or taxpayer in an action like this one would defeat the purpose of the Act. *See City of Salem v. Oregon–Washington Water Serv. Co.*, 144 Or. 93, 23 P.2d 539, 543 (1933). In addition, no one else "claim[ed] an interest relating to the subject of the action," and complete relief can be awarded to those parties already in the action. *See* SCRA 1–019(A)(1) & (2).

### *Authority to Contract*

■ The Association's claim that the Commission had no authority to contract

**110**

with BOR also must fail. The Association argues that the Commission may not contract with the BOR for water rights, but that individual municipalities can under Section 3–27–5(A) if they pass ordinances authorizing the contract. Absent an ordinance, the Association argues, none of the individual member-municipalities had the capacity to contract with the BOR.

The Association, however, ignores the Joint Powers Agreements Act, NMSA 1978, Sections 11–1–1 to –7 (Repl. Pamp.1983 & Cum.Supp.1991), which allows more than one municipality or county to enter into an agreement with the United States government. Section 11–1–3 makes no mention of having to pass an ordinance, but instead requires only that a public agency, defined in Section 11–1–2(A), be authorized to do so. *See* Section 11–1–3. None of the individual members of the Commission passed ordinances to enter into the Joint Powers Agreement, but each member passed a resolution that authorized them to sign the contracts with the BOR in their capacity as members of the Commission for the acquisition of a water supply. The district court held that each member of the Commission had the authority under the Joint Powers Agreements Act to form the Commission and contract with the BOR for water rights. Section 11–1–3 provides that "two or more public agencies by agreement may jointly exercise any power common to the contracting parties...." The district court found that their "common authority" existed under NMSA 1978, Section 72–14–28(E) (Repl. Pamp.1985), which authorizes the "political subdivisions of this state ... and similar organizations, organized under the laws of New Mexico" to contract with the United States concerning water projects. We agree.

*Funding the Agreement*

Under the Joint Powers Agreement, the only entity responsible for payment to the BOR for water rights is San Juan County. The County will make payments from a special, segregated fund comprised of the proceeds of ad valorem property taxes. The County submitted to referendum the question of whether it should enter into the contracts and pledge revenues for payment of the water rights. The measure passed by majority vote.

■ The Association argues that NMSA 1978, Section 72–4–8 (Repl.Pamp.1985) restricts the County to using only water revenue bonds to fund the project. The Commission claims that Section 72–4–8 applies only to the funding of water supply systems and not to the acquisition of water rights. The Association asserts that there is no meaningful distinction between a "water system" and "water rights" and that accordingly, the Commission and San Juan County must follow the statutorily prescribed method in Section 72–4–8 for funding the contracts.

The legislature, however, appears to have intended a distinction between "water rights" and "water systems" because it authorized the acquisition of water rights in NMSA 1978, Section 72–4–2 (Repl. Pamp.1985) [1] and authorized the acquisition of water systems in NMSA 1978, Section 72–4–3 (Repl.Pamp.1985). Section 72–4–8 applies only to the funding of water systems, and it does not restrict the funding for the acquisition of water rights in the same manner. Thus, we believe that the district court was correct in holding that the County may use ad valorem taxes to fund the contracts.

The procurement of water in an arid state such as New Mexico is of unique importance. A legislative distinction, for purposes of financing, between water rights and water supply systems gives needed flexibility to county governments in their quest for providing adequate water resources for their citizens. Water revenue bonds as provided for in Section 72–4–8

---

**1.** Section 72–4–2 empowers a county to "acquire, *by purchase* or exchange upon such terms and conditions and *in such manner as [the county] may deem proper ... any water rights* ... deemed necessary or proper for public use for the development of a county water supply system." (Emphasis added).

are repaid by charging customers for the use of the infrastructure that constitutes the water supply system. Water rights, however, may have to be purchased for future needs. In this circumstance, there would be no immediate revenue from customers to pay for the water rights. Section 72–4–2 provides for much discretion in financing the purchase of this water.

 The Association also claims that the County's funding mechanism runs afoul of the Bateman Act, NMSA 1978, Section 6–6–11 & Sections 6–6–13 to –18 (Repl.Pamp.1992). The Act was intended to require municipalities and counties to "live within their annual incomes." *City of Hobbs v. State ex rel. Reynolds*, 82 N.M. 102, 104, 476 P.2d 500, 502 (1970). The Bateman Act has no application, however, to special funds created for special purposes. *Id.* The Joint Powers Agreement here was intended to create a special fund generated by a specific mill levy to pay for the acquisition of water rights, and thus it does not violate the Bateman Act.

### Material Facts in Issue

 The Association claims that the district court erred by granting summary judgment and confirming the contracts because there are material facts still in issue, namely that the BOR does not have enough water available to meet its obligations under the contracts. The assumption underlying the contracts, which is incorrect according to the Association, is that there is a pool of unappropriated water available for the contract beneficiaries. The Association argues that this constitutes lack of consideration, which is fatal to the validity of the contracts.

 The Commission asserts that even if the exact amount of water is in dispute under the contract, it is not material to whether the contract is valid, and we agree. The Association's argument is akin to an assertion of anticipatory breach, which is not material to the formation of the contract. A contract may be construed before its breach. *See* NMSA 1978, § 44–6–5. Even if there is a dispute over immaterial issues, summary judgment is proper as long as no material facts are disputed.

*Smith v. Price's Creameries*, 98 N.M. 541, 546, 650 P.2d 825, 830 (1982).

### CONCLUSION

 The Association does not argue that the trial court abused its discretion under Rule 15, nor does it show how it was prejudiced by the Commission's failure to specifically plead jurisdiction under the Declaratory Judgment Act. The trial court had the authority to amend the pleadings under Rule 15, and thus it had subject matter jurisdiction under the Act. In addition, the trial court did not lack jurisdiction for failure to join necessary parties under Rule 19. In complex litigation involving public matters, it is not necessary to join as parties each and every citizen who might be subject to higher taxes. Joinder of every taxpayer would unnecessarily complicate matters, which would defeat the purpose of the Declaratory Judgment Act.

 In addition, the trial court correctly held that the Commission had the authority to enter into the contracts with the BOR. Each member of the Commission authorized the contracts by resolution consistent with the Joint Powers Agreements Act. The trial court also correctly found that San Juan County could fund its acquisition of water rights with a special fund consisting of ad valorem taxes. The Bateman Act does not apply to special funds, but only to the general funds of a county or municipality. *See City of Hobbs*, 82 N.M. at 104, 476 P.2d at 502. Section 72–4–2 empowered San Juan County to acquire water rights, and Section 72–4–8 does not restrict it from using ad valorem taxes.

Finally, the trial court correctly held that no material facts were disputed. The issue concerning the availability of unappropriated water was immaterial to the validity of the contract. Because summary judgment was proper, the judgment below is affirmed.

**IT IS SO ORDERED.**

RANSOM, C.J., and BACA, J., concur.