1998-NMSC-025

964 P.2d 82

Barbara SRADER, Tony Srader, Susan Padilla, Elias Archibeque, Hilliard Crown, Aili Pakarinen, Warren Snyder, Stephen T. Towne, and other similarly situated, Plaintiffs–Appellants,

v.

William J. VERANT, Director, New Mexico Financial Institutions Division, Dorothy A. Danfelser, Secretary, New Mexico Human Services Department, and First Security Bank of New Mexico, First Security Corporation, Sunwest Bank of Albuquerque, N.A. Sunwest Bank of Rio Arriba, N.A., Boatmen's Bancshares, Inc., First Financial of New Mexico Federal Credit Union, Norwest Bank New Mexico, N.A., Norwest Corporation, Mastercard International, Inc., Visa USA, Inc., Plus, Cirrus, Lynx, Currency Exchange of Wisconsin, Citibank (South Dakota), N.A., New Mexico Educators Credit Union, Comcheck, Smartcheck, Collectrite, Inc., of Albuquerque, Telecheck Services, Inc., and Robert M. Schwartz, District Attorney, Second Judicial District, Joe Bowdich, Bernalillo County Sheriff, Joe Polisar, Albuquerque Police Chief, Tom Udall, New Mexico Attorney General, Frank Taylor, New Mexico State Police Chief, and Isleta Bingo and Gaming Palace, Defendant–Appellees.

Barbara SRADER, Tony Srader, Susan Padilla, Elias Archibeque, Hilliard Crown, Aili Pakarinen, Warren Snyder, Stephen T. Towne, and others similarly situated, Plaintiffs–Appellees,

v.

William J. VERANT, Director, New Mexico Financial Institutions Division, Dorothy A. Danfelser, Secretary, New Mexico Human Services Department, and First Security Bank of New Mexico, First Security Corporation, Sunwest Bank of Albuquerque, N.A., Sunwest Bank of Rio Arriba, N.A., Boatmen's Bancshares, Inc., First Financial of New Mexico Federal Credit Union, Norwest Bank New Mexico, N.A., Norwest Corporation, Mastercard International, Inc., Visa USA, Inc., Plus, Cirrus, Lynx, Currency Exchange of Wisconsin, Citibank (South Dakota) N.A., New Mexico Educators Credit Union, Comcheck, Smartcheck, Collectrite, Inc., of Albuquerque, Telecheck Services, Inc., and Robert M. Schwartz, District Attorney, Second Judicial District, Joe Bowdich, Bernalillo County Sheriff, Joe Polisar, Albuquerque Police Chief, Tom Udall, New Mexico Attorney General, Frank Taylor, New Mexico State Police Chief, and Isleta Bingo and Gaming Palace, Defendants–Appellants.

Nos. 24136, 24235.

Supreme Court of New Mexico.

July 20, 1998.

Victor R. Marshall & Associates, Victor R. Marshall, Albuquerque, for Plaintiffs.

William F. Riordan, Albuquerque, for Defendants William J. Verant and Dorothy Danfelser.

John T. Porter, P.A., John T. Porter, Albuquerque, for Defendants First Security Bank of New Mexico, First Security Corporation and Currency Exchange of Wisconsin.

Modrall, Sperling, Roehl, Harris & Sisk, P.A., Timothy R. Van Valen, Kenneth Harrigan, Albuquerque, for Defendants Sunwest Bank of Albuquerque, N.A., Sunwest Bank of Rio Arriba, N.A., and Boatman's Bancshares, Inc.

Eastham, Johnson, Monnheimer & Jontz, P.C., Nickay B. Manning, Dennis E. Jontz, Albuquerque, for Defendant First Financial of New Mexico.

Rodey, Dickason, Sloan, Akin & Robb, P.A., Jonathan W. Hewes, Mark A. Smith, Albuquerque, for Defendants Norwest Bank New Mexico, N .A., Norwest Corporation, Citibank (South Dakota), N.A., Mastercard International, Inc., Visa USA, Inc., Plus and Cirrus.

Madison, Harbour & Mroz, P.A., William C. Madison, Robert E. Hanson, Michael Dekleva, Albuquerque, for Defendant Lynx.

Butt, Thornton & Baehr, P.C., James E. Johansen, Rodney Schlagel, Albuquerque, for Defendant N.M. Educators Credit Union.

Gordon S. Little, P.A., Gordon S. Little, Albuquerque, for Defendant Comcheck.

Gallagher, Casados & Mann, P.C., Nathan H. Mann, Reed S. Sheppard, Albuquerque, for Defendant Collectrite, Inc., of Albuquerque.

Hinkle, Cox, Eaton, Coffield & Hensley, William P. Slattery, James C. Martin, Santa Fe, for Defendant TeleCheck Services, Inc.

Paul M. Schneider, Robert D. Lohbeck, Santa Fe, for Defendants Robert M. Schwartz and Frank Taylor.

Robert M. White, City Attorney, William D. Winter, Assistant City Attorney, Albuquerque, for Defendant Joe Polisar.

Butkus & Reimer, P.C., Carl J. Butkus, Albuquerque, for Defendant Joe Bowdich.

Tom Udall, Attorney General, Christopher Coppin, Assistant Attorney General, Santa Fe, for Defendant Tom Udall, Attorney General.

Ussery & Parrish, P.A., L. Lamar Parrish, Albuquerque, for Defendant Isleta Bingo and Gaming Palace.

John J. Gill, Michael F. Crotty, Irving D. Warden, Washington D.C., for Amicus Curiae American Bankers Association.

## OPINION

BACA, Justice.

{1} In this consolidated appeal, we review a district court's rulings concerning motions to dismiss on the basis of federal preemption, Rule 1–019 NMRA 1998, and Rule 1–012(B)(6) NMRA 1998. Plaintiffs Srader et al. are individuals who suffered gambling losses in Indian casinos after the start of Indian gaming in New Mexico in 1995.[1] In the first case consolidated within this appeal, Plaintiffs sued a group of Defendants consisting of numerous financial institutions (Financial Defendants). These entities have provided banking and financial services to gamblers and casinos both on and off the reservation since 1995. Plaintiffs argue that the Financial Defendants allegedly furthered and supported illegal casino gambling by providing financial services to casinos and gamblers in violation of existing state anti-gambling laws, the law of negotiable instruments, and New Mexico's criminal code. Plaintiffs want the Financial Defendants to stop providing financial services to gamblers and gambling casinos. Plaintiffs also seek to recoup their gambling losses.

{2} The Financial Defendants sought dismissal of these claims before the district court, citing Rules 1–019 and 1–012(B)(6). Under Rule 1–019, they argued that the case could not proceed without the Indian gaming tribes because the tribes are indispensable parties in the determination of the issues presented. The Financial Defendants also asserted that sovereign immunity precludes the tribes' addition to the suit and that the claims should be dismissed. Regarding Rule 1–012(B)(6), the Financial Defendants argued that Plaintiffs do not state a claim for which

1. The compacts that initially authorized New Mexico Indian gaming were later declared invalid by the New Mexico Supreme Court after the Court determined that the governor unconstitutionally entered the compacts without legislative input and approval. *State ex rel. Clark v. Johnson,* 120 N.M. 562, 904 P.2d 11 (1995).

relief can be granted. They asserted that some of the Plaintiffs' causes of action are premised upon criminal statutes that do not provide for private causes of action. The Financial Defendants also argued that Plaintiffs' other allegations are so strained as to render them legally insufficient. The district court granted dismissal, citing both Rule 1–019 and 1–012(B)(6). However, Plaintiffs sought review by the Court of Appeals, and it certified the case to this Court pursuant to NMSA 1978, § 34–5–14(C) (1972).

{3} In the second case in this consolidated review, Plaintiffs sued a second group of defendants consisting of various New Mexico law enforcement officials (Government Defendants). Citing New Mexico statutes, Plaintiffs alleged that the Government Defendants breached their duty to enforce New Mexico's anti-gambling laws. As relief, Plaintiffs requested that, within New Mexico's territorial jurisdiction, the Government Defendants be required to prevent the flow of gambling money between the financial institutions, gamblers, and the casinos. Plaintiffs also sought an award of damages against some of the Government Defendants, arguing that these defendants failed to protect Plaintiffs from the harms resulting from gambling.

{4} The Government Defendants sought dismissal of these claims before the district court on the basis of both federal preemption and Rule 1–019. The district court denied the motions seeking dismissal on these grounds. Subsequently, the Government Defendants sought interlocutory review of the trial court's rulings. *See* NMSA 1978, § 39–1–1 (1917). On appeal, the Government Defendants added a Rule 1–012(B)(6) argument to their other points for consideration. Like the Financial Defendants, the Government Defendants argued that the Plaintiffs fail to state a claim under Rule 1–012(B)(6) for which relief can be granted.

{5} This Court consolidated these cases under Rule 12–202(F) NMRA 1998, and now considers the propriety of the district court's action in both cases. After careful review, we hold that federal law does not preempt the state law claims presented here. However, we uphold the district court's dismissal of

the claims against the Financial Defendants based on Rule 1–019. In addition, under an analysis of the same rule, we reverse the denial of dismissal of the claims against the Government Defendants. Finally, because this conclusion disposes of all claims against all defendants in this case, we do not consider the trial court's decisions regarding Rule 1–012(B)(6).

I.

{6} We first review the Government Defendants' arguments that the Indian Gaming Regulatory Act (IGRA), 18 U.S.C. § 1166 (1994), and the weight of federal precedent preempt the state law claims presented. We hold that IGRA does not preempt the claims in this case.

{7} The principle of federal preemption finds its genesis in the Supremacy Clause of Article VI of the United States Constitution. Preemption occurs when "federal law so occupies the field that state courts are prevented from asserting jurisdiction." *State v. McHorse,* 85 N.M. 753, 757, 517 P.2d 75, 79 (Ct.App.1973). Whether federal law preempts state law is generally a question of congressional intent. *Montoya v. Mentor Corp.,* 122 N.M. 2, 4, 919 P.2d 410, 412 (Ct.App.1996).

{8} Congress intended that IGRA establish the framework by which Indian tribes and states may establish compacts permitting Class III gaming within reservation land. *See* 25 U.S.C. § 2702 (1994). Within this framework, IGRA was intended to strike a balance between tribal sovereignty and states' rights in regulating gambling. *See* 25 U.S.C. § 2710(d)(3)(A) (1994) (permitting gaming in states where a valid compact between states and tribes exists); 25 U.S.C. § 2710(d)(3)(A) (1994) (establishing procedures for good faith negotiations between states and tribes); *see also* S.Rep. No. 446, at 13 (1988), *reprinted in* 1988 U.S.C.C.A.N. 3071. Hence, rather than suggesting that states are completely preempted from the field of Indian gaming, IGRA's provisions and history strongly suggest that the states possess an important participatory role in the field.

{9} In *Seminole Tribe v. Florida*, the U.S. Supreme Court considered the constitutionality of one of IGRA's provisions, 25 U.S .C. § 2710(d)(7)(A)(i) (1994), which purports to allow a tribe to sue a state for failure to negotiate under IGRA. *Seminole Tribe v. Florida*, 517 U.S. 44, 47, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996). The Court struck down the provision under the Eleventh Amendment, noting that, as sovereigns, the states only are amenable to suit where they have consented or where Congress has clearly manifested an intention to supersede state sovereignty and has acted "pursuant a valid exercise of power ." *Id.* at 54–55, 116 S.Ct. 1114. Although the Court determined that IGRA's provisions demonstrated such an intent, the Court held the IGRA provision unconstitutional because Congress lacked authority under the Indian Commerce Clause to abrogate state sovereignty. *Id.* at 72, 116 S.Ct. 1114. Thus, the interests and sovereignty of the states were held to be important factors for consideration in the establishment and regulation of Indian gaming. More importantly for purposes of this analysis, *Seminole* stands for the proposition that the role of the states in tribal gaming cannot be ignored.

▆▆▆▆ {10} Although we note the importance of state involvement and sovereignty, a state's role in the regulation of Indian gaming is somewhat limited. Generally, the federal government has exclusive jurisdiction over gaming-related violations of law that take place on Indian reservations.[2] *United Keetoowah Band of Cherokee Indians v. State. ex rel. Moss.*, 927 F.2d 1170, 1177 (10th Cir.1991). Where a valid state-tribal compact exists, state regulation of Indian gaming is fixed by that which is delineated within the compact. *See, e.g., Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 545–46 (8th Cir.1996).

▆▆▆▆ {11} However, these observations only serve as a starting point in an inquiry concerning the extent of IGRA's preemptive power here. It is important to recognize that there exists "a reluctance to preempt state laws relating to health and safety matters because those matters generally have been the exclusive concern of the states." *Montoya*, 122 N.M. at 4, 919 P.2d at 412 (citing *New York State Conference of Blue Cross and Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995); *Hillsborough County, Fla. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 715, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985)). A strong presumption exists against preemption, and there is an " 'assumption that the historic police powers of the States [are] not to be superseded by [a] Federal Act unless that [is] the clear and manifest purpose of Congress.' " *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). Thus, it is within New Mexico's police power to regulate illegal activity within the territorial boundaries of the State, unless the Government Defendants can demonstrate that Congress intended to supersede that police power through IGRA in this case.

▆▆▆▆ {12} The claims in this case are not preempted because the Government Defendants fail to overcome the presumption favoring the exercise of state police power. The Government Defendants emphasize the case law recognizing the expansive preemptive force of IGRA. They assert that disputes concerning Indian gaming regulation under IGRA are to be resolved via federal jurisdiction. Furthermore, they also argue that the vast majority of case law indicates that IGRA preempts any dispute that potentially may "interfere[ ] or [be] incompatible with federal and tribal interests reflected in federal law." *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 334, 103 S.Ct. 2378, 76 L.Ed.2d 611 (1983) (citing *White Mountain Apache Tribe*

---

**2.** A state may exercise jurisdiction on Indian land in such cases where a tribe and state have consented to such an arrangement. *See, e.g., Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 545 (8th Cir.1996). Additionally, states may exercise jurisdiction in cases that incidentally concern gaming, but not where state claims clearly and substantially involve, regulate or interfere with gaming. *See Gallegos v. San Juan Pueblo Bus. Dev. Bd. Inc.*, 955 F.Supp. 1348 (D.N.M.1997) (holding that a state law replevin claim against a pueblo was not preempted by IGRA even though the dispute involved an alleged agreement over slot machines).

*v. Bracker*, 448 U.S. 136, 145, 100 S.Ct. 2578, 65 L.Ed.2d 665 (1980)).

{13} We recognize IGRA's purpose and New Mexico's limited regulatory power over Indian gaming. However, we reject the Government Defendants' claims on this issue. At all times relevant to the claims before us, Indian gaming was illegal in New Mexico, both on and off the reservation, since no valid IGRA gaming compact was in effect. *See State ex rel. Clark v. Johnson*, 120 N.M. 562, 904 P.2d 11 (1995) (declaring the gaming compacts between New Mexico tribes and New Mexico's governor invalid). The avenue established for state regulation of Indian gaming is through an existing state-tribe compact. *See Dorsey*, 88 F.3d at 545–46. Without such a compact in place, the State of New Mexico never had the opportunity to participate fully in the process set forth under IGRA to address State concerns in establishing Class III gaming. *See id.*

{14} Furthermore, gaming compacts are the vehicles that give force to IGRA's potential preemptive power. Defendants consistently cite IGRA preemption language from cases where valid gaming compacts existed for the assertion of federal jurisdiction, but such case law has little bearing on the preemption inquiry before this Court. As noted, no valid compact existed in this case that articulated the limitations and powers of the state and tribes. Without some clear manifestation of an intention by New Mexico via a valid IGRA compact to surrender jurisdiction within its territorial jurisdiction, alleged violations of New Mexico law remain within this Court's control. Defendants have failed to present reasoning or authority that would overcome the presumption favoring state police power in a case of this nature. We therefore reject Defendants' arguments concerning preemption of these claims.

{15} Our conclusion that these claims are not preempted carries particular import for the Government Defendants since they are charged with enforcing New Mexico's laws. We recognize that New Mexico and its law enforcement officials generally do not have the power to enforce New Mexico laws within the boundaries of an Indian reservation. Within reservations, enforcement of gaming laws is primarily a federal government function. *See United Keetoowah Band of Cherokee Indians*, 927 F.2d at 1177. Thus, upon declaration by this Court that the gaming compacts of 1995 were invalid as a matter of state law, it was the responsibility of the federal government to enforce any violations of gaming laws which might have taken place on the reservation.

{16} However, we firmly assert the State officials' authority to enforce New Mexico's laws outside of the reservations, NMSA 1978, § 29-1-1 (1921), especially where no valid compact divests this State of jurisdiction within its own territory. Since no valid compact existed here, it was the responsibility of the Government Defendants to determine if New Mexico's existing gaming or other laws were being violated outside of the reservation. Subsequently, the Government Defendants could exercise appropriate discretion in bringing possible charges against any violators of these laws.[3]

## II.

{17} We next address whether the Indian gaming tribes are "persons to be joined if feasible" and indispensable parties under Rule 1–019. The trial court granted dismissal of Plaintiffs' claims against the Financial Defendants on this basis, but denied a similar motion sought by the Government Defendants. We hold that the tribes are persons to be joined if feasible with regard to all claims herein. However, sovereign immunity prevents addition of the tribes to the suit. Finally, we conclude that these claims should not proceed in the tribes' absence. Therefore, we affirm the trial court's treatment of these issues as they relate to the Financial Defendants. However, as for the Government Defendants, we reverse the trial court's failure to dismiss the claims under Rule 1–019.

---

3. New state-tribal gaming compacts have since been signed in New Mexico. It remains within the discretion of New Mexico law enforcement officials to bring action against those deemed to have violated New Mexico law during the period pre-dating existence of the new compacts.

{18} Rule 1–019 governs the "Joinder of Persons Needed for Just Adjudication." The rule contains a three-part analysis. The first section, Rule 1–019(A), states in part:

A. *Persons to be joined if feasible.* A person who is subject to service of process shall be joined as a party to the action if (1) in his absence complete relief cannot be accorded among those already parties; or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may:

(a) as a practical matter impair or impede his ability to protect that interest; or

(b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his claimed interest.

Rule 1–019(A) NMRA 1998.

{19} Second, once the court decides that a person should be joined if feasible, the court must determine whether the person's joinder is possible. Rule 1–019(B). If joinder is not precluded by jurisdictional barriers, joinder is normally feasible,[4] and the court orders joinder, thus ending the issue.

{20} However, if a person to be joined if feasible cannot be joined, the court then determines if the case can continue with the parties before the court, or whether the case should be dismissed. *Id.* Rule 1–019(B) states:

B. *Determination by court whenever joinder not feasible.* If a person as described in Subparagraph (1) or (2) of Paragraph A of this rule cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions; in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for non-joinder.

Rule 1–019(B) NMRA 1998.

{21} The question of indispensability is a factual question that the district court determines, and the district court decides, in its discretion, whether the suit can continue without a specific party. *Sims v. Sims,* 122 N.M. 618, 630, 930 P.2d 153, 165 (1996). In reviewing a district court's Rule 1–019 decision, this Court considers whether the district court abused its discretion. *C.E. Alexander & Sons, Inc. v. DEC Intern., Inc.,* 112 N.M. 89, 91, 811 P.2d 899, 901 (1991).

A.

{22} Pursuant to Rule 1–019(A) the tribes are parties that should be joined if feasible. In this inquiry, New Mexico courts have adopted a functional analysis of the effects of the person's absence upon the existing parties, the absent person, and the judicial process itself. *See Grady v. Mullins,* 99 N.M. 614, 615, 661 P.2d 1313, 1314 (1983). Courts demonstrate a willingness to bring in an absent person whenever there exists a reasonable possibility that the person's interests will be affected by the conclusion of an action to which he has not been made a party. *See, e.g., In re Valdez,* 88 N.M. 338, 540 P.2d 818 (1975) (holding that since determination of the proceeding might affect a third party's policies and operations, a disposition in absence of the third party might impair its ability to protect its interests).

{23} Whatever Plaintiffs' intentions, the subject claims, continued in the tribes' absence, as a practical matter could "impair or impede [the tribe's] ability to protect [their] interest[s]." Rule 1–019(2)(a). The First Amended Complaint requested that, among

4. Joinder may also be affected by procedural difficulties such as those that might be posed by the joinder of large numbers of parties. *See, e.g.,* *San Juan Water Comm'n v. Taxpayers and Water Users of San Juan County,* 116 N.M. 106, 109, 860 P.2d 748, 751 (1993).

other things, the trial court: (1) order the named defendants to deny all services to the casinos and persons affiliated with the casinos and to cease providing funds to casino related operations; (2) order tracing, accounting for, and return of all proceeds associated with gambling; (3) order that all gambling transactions from the casino be declared void; (4) order that all items or funds from gambling transactions be impounded; (5) rescind or void all transactions derived from casino gambling; (6) issue writs of garnishment, replevin and other writs as appropriate; (7) order Government Defendants to search the premises of Financial Defendants for equipment used in casino gambling; and (8) order Government Defendants to investigate all other violations of gambling laws.

{24} This requested relief would halt the exchange of money upon which the tribes rely for business at their casinos. It calls for the confiscation of property and funds in which the tribes have an interest, the garnishment of tribal funds, the interruption of commercial relationships between the tribes and financial institutions, and the nullification of transactions in which the tribes have an interest. Furthermore, it calls upon government and law enforcement officials to carry out these remedies where necessary.

{25} These types of remedies clearly implicate the interests of the tribes under Rule 1–019(A). *See Enterprise Management Consultants, Inc. v. United States ex rel. Hodel,* 883 F.2d 890 (10th Cir.1989) (holding that the validity of contract could not be adjudicated in a tribe's absence where the tribe was a party to the contract); *Jicarilla Apache Tribe v. Hodel,* 821 F.2d 537 (10th Cir.1987) (holding a lease cancellation could not be adjudicated in a tribe's absence where the lease affected tribal interests); *Holguin v. Elephant Butte Irrigation Dist.,* 91 N.M. 398, 575 P.2d 88 (1977) (finding that an attempt to litigate water rights implicating U.S./Mexico treaty could not be adjudicated without United States government), *overruled on other grounds, C.E. Alexander & Sons, Inc.,* 112 N.M. 89, 811 P.2d 899. The Court may consider this type of economic impact caused by disputes between non-Indi-

an parties when analyzing the practical effects of permitting litigation without a tribe's inclusion. *See United States ex rel. Hall v. Tribal Dev. Corp.,* 100 F.3d 476, 478 (7th Cir.1996); *Lyon v. Amoco Prod. Co.,* 923 P.2d 350, 356 (Colo.Ct.App.1996).

{26} Plaintiffs assert that the tribes should not be considered "parties to be joined if feasible" under Rule 1–019. The Plaintiffs reason that they are not suing the tribes, and it has not been shown that the tribes are the actual owners/managers of the casinos. However, we note that a person is considered necessary for adjudication if *"as a practical matter,* [disposition of the action in his absence may] impair or impede [his] ability to protect that interest." Rule 1–019(A)(2) (emphasis added); *see Mullins,* 99 N.M. at 615, 661 P.2d at 1314. Plaintiffs' arguments concerning ownership/management of the casinos fail to answer the broad tribal and business-related implications associated with the requested relief here. Therefore, we reject Plaintiffs' contentions on this issue.

## B.

{27} With the determination that the gaining tribes are persons to be joined if feasible, we now must determine whether the tribes may be made a party. Plaintiffs contend that tribal sovereign immunity is not dispositive of this issue, particularly since this suit involves off-reservation activities by non-Indians. Plaintiffs further allege that the "bald assertion" of a tribal interest should not serve to undercut the State's police power. According to the Plaintiffs, the tribes' interest and ties to this suit are insignificant and, therefore, sovereign immunity should not govern this Court's determination.

{28} We disagree with Plaintiffs' characterization of this case, but we need not revisit Plaintiffs' arguments on this issue. We have already determined that the tribes' interests are substantially implicated here. We now must decide only whether the tribes may be joined.

{29} Sovereign immunity precludes joining the gaming tribes in this case. As sovereigns, Indian tribes are immune

from suit absent Congressional authorization or an effective waiver in tribal, state, or federal court. *Kiowa Tribe v. Manufacturing Techs., Inc.,* — U.S. ——, 118 S.Ct. 1700, 1702, 140 L.Ed.2d 981 (1998); *Three Affiliated Tribes v. Wold Eng'g,* 476 U.S. 877, 890, 106 S.Ct. 2305, 90 L.Ed.2d 881 (1986); *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). *United States v. United States Fidelity & Guar. Co.,* 309 U.S. 506, 512, 60 S.Ct. 653, 84 L.Ed. 894 (1940); *Seneca–Cayuga Tribe v. State. ex rel. Thompson,* 874 F.2d 709, 712 (10th Cir.1989). New Mexico citizens filed the current claims in state court. No waiver exists that permits suit against the tribes in state court, and no Congressional authorization has been given. Therefore, the doctrine of sovereign immunity precludes joinder of the tribes.

## C.

{30} The case is dismissed with regard to all Defendants based on inability to join indispensable parties under Rule 1–019(B). When a person who should be joined if feasible cannot be joined, the court must decide whether to dismiss or proceed without the person, and the decision "can only be determined in the context of particular litigation." *Holguin,* 91 N.M. at 401, 575 P.2d at 91.

{31} The first factor for consideration under Rule 1–019(B) is "to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties." Rule 1–019(B). This is essentially the same analysis as the Rule 1–019(A) "interest" inquiry. *See, e.g., Quileute Indian Tribe v. Babbitt,* 18 F.3d 1456, 1459–60 (9th Cir.1994). Subsection A of this portion of the Opinion already held that an adverse judgment against the Defendants in this case might prejudice the interests of the gaming tribes. Therefore, we need not revisit our conclusion concerning the substantial interests implicated by this suit.

{32} We also conclude that protective provisions or the shaping of relief in any such judgment would not alleviate the concerns of possible prejudice. *See* Rule 1–019(B). As previously noted, the requested relief here would stop all funding of Indian gaming. Because the tribes are directly involved in the commercial transactions that the litigation seeks to halt, no protective provisions could insulate the tribes from the effects of an adverse judgment. *See In re United States ex rel. Hall,* 825 F.Supp. 1422, 1429 (D.Minn.1993), *aff'd,* 27 F.3d 572 (8th Cir. 1994).

{33} In addition, the adequacy of remedy remaining for the Plaintiffs in the event of dismissal provides no basis for permitting this case to proceed without the tribes. As a matter of public policy, the public interest in protecting tribal sovereign immunity surpasses a plaintiffs interest in having an available forum for suit. *See Kickapoo Tribe v. Lujan,* 728 F.Supp. 791, 797 (D.D.C.1990); *Enterprise,* 883 F.2d at 894.

{34} Equity and good conscience do not suggest a different result. The majority of case law suggests that Rule 1–019 requires dismissal when an immune tribe has substantial interests in the litigation. *See Keweenaw Bay Indian Community v. Michigan,* 11 F.3d 1341 (6th Cir.1993); *Shermoen v. United States,* 982 F.2d 1312 (9th Cir.1992); *Pembina Treaty Comm. v. Lujan* 980 F.2d 543 (8th Cir.1992); *Fluent v. Salamanca Indian Lease Auth.,* 928 F.2d 542 (2nd Cir.1991); *Enterprise,* 883 F.2d 890 (10th Cir.1989); *Jicarilla Apache Tribe,* 821 F.2d 537. Plaintiffs' emphasis that non-Indians performed the acts in question while within New Mexico's jurisdictional boundaries does not change the Rule 1–019 considerations. The remedies requested pose substantial risks for the Indian tribes' interests, and Plaintiffs fail to credibly suggest methods for addressing those concerns if this litigation were permitted to continue.

{35} We reject Plaintiffs' argument that our decision in *Johnson,* 120 N.M. at 570, 904 P.2d at 19, is dispositive on the issue of the tribes' indispensability. In *Johnson,* this Court considered a mandamus action brought against the Governor of New Mexico after he signed gaming compacts without legislative approval. *Id.* at 566, 904 P.2d at 15. Resolution of the controversy involved only the relative authority of the executive and legis-

lative branches of New Mexico government. Therefore, this Court took the view that the presence of the tribes was not required to adjudicate which branch of state government possessed particular powers.

{36} Furthermore, the *Johnson* Court's holding regarding the indispensability of the tribes hinged upon the mandamus posture of the case. The Court stated:

> The Governor has argued that the Tribes and Pueblos with whom he signed the compacts and agreements are indispensable parties to this proceeding. We disagree. *In a mandamus case,* a party is indispensable if the "performance of an act [to be compelled by the writ of mandamus] dependent on the will of a third party, not before the court." *Chavez v. Baca,* 47 N.M. 471, 482, 144 P.2d 175, 182 (1943). That is not the case here. Petitioners seek a writ of mandamus against the Governor of New Mexico, not against any of the tribal officials. Resolution of this case requires only that we evaluate the Governor's authority under New Mexico law to enter into the compacts and agreements absent legislative authorization or ratification. Such authority cannot derive from the compact and agreement; it must derive from state law. *This is not an action based on breach of contract, and its resolution does not require us to adjudicate the rights and obligations of the respective parties to the compact.*

*Id.* at 570, 904 P.2d at 19 (emphasis added).

{37} Plaintiffs cannot assume that because the tribes were held not to be indispensable parties in *Johnson* that the tribes will always be of similar status in claims that involve gaming. *Johnson* articulates an indispensability rule based on the special character of mandamus. Such a rule does not apply to non-mandamus questions of the nature presented in this case. Therefore, the mandamus status of *Johnson* makes it an inappropriate analogy to the current case, and a showing still must be made, using the considerations of Rule 1–019 and the facts of the particular case, that a person is an indispensable party. We have held in this opinion that Rule 1–019 and the facts of this case require a finding that the tribes are indis-

pensable parties to this dispute, and we conclude that Johnson, particularly because of its mandamus posture, does not alter that decision.

{38} Finally, we reject Plaintiffs' contention that the law governing checks and other financial instruments permits this case to proceed without inclusion of the gaming tribes. Plaintiffs' arguments fail to provide persuasive reasoning for abandoning the Rule 1–019 analysis required in this case. *See* Rule 1–019.

### III.

{39} We conclude that the trial court correctly dismissed this case on the basis of Rule 1–019 with respect to the Financial Defendants. We also hold that the Rule 1–019 reasoning outlined in this Opinion applies similarly to the Government Defendants. Consequently, we reverse the trial court's conclusion regarding the Government Defendants and grant dismissal under Rule 1–019. *See C.E. Alexander & Sons, Inc.,* 112 N.M. at 91, 811 P.2d at 901 (noting that during review of district court's Rule 1–019 decision, appellate court considers whether the district court abused its discretion). Hence, all claims in this suit are hereby dismissed under Rule 1–019 with respect to all Defendants.

{40} This court also concludes that with the disposal of all claims under Rule 1–019, it is unnecessary for this Court to determine whether the trial court erred in its Rule 1–012(B)(6) conclusions. *See New Mexico Bus Sales v. Michael,* 68 N.M. 223, 226, 360 P.2d 639, 641 (1961) (reviewing court will not decide academic or moot questions or grant party unavailing relief); *Porter v. Robert Porter & Sons, Inc.,* 68 N.M. 97, 102, 359 P.2d 134, 137 (1961) (holding that the Supreme Court will not decide questions where no actual relief will be afforded); *Crist v. Town of Gallup,* 51 N.M. 286, 290, 183 P.2d 156, 158 (1947) (noting that ordinarily the Supreme Court does not pass on questions unnecessary for a decision).

{41} **IT IS SO ORDERED.**

FRANCHINI, C.J., and SERNA and McKINNON, JJ., concur.