2000-NMCA-005

994 P.2d 772

**GOLDEN OIL COMPANY,**
**Plaintiff–Appellant,**

v.

**CHACE OIL COMPANY, INC.,**
**Defendant–Appellee.**

**No. 19,825.**

Court of Appeals of New Mexico.

Dec. 29, 1999.

Philip Craig Snyder, Albuquerque, for Appellant.

L. Michael Messina, Messina, Madrid & Smith, P.A., Albuquerque, for Appellee.

## OPINION

PICKARD, Chief Judge.

{1} Golden Oil Company (Buyer) filed suit against Chace Oil Company, Inc. (Seller) for breach of contract after Seller refused to sign certain forms under an agreement to sell its operating interests in several oil and gas leases on the Jicarilla Apache Reservation to Buyer. Buyer asked the trial court to compel Seller to sign these forms because the Jicarilla Apache Tribe (Tribe) informed Buyer that it could not continue operating the oil and gas leases without them. The trial court dismissed Buyer's complaint without prejudice on the ground that Buyer failed to join the Tribe as a necessary and indispensable party to this lawsuit. On appeal, Buyer argues the trial court erred because the Tribe's interests will not be impaired or impeded by resolution of the issues presented for adjudication. We disagree and affirm.

## BACKGROUND AND PROCEDURAL HISTORY

{2} In 1992, Seller sold to Buyer certain operating rights it had to oil and gas leases on the Jicarilla Apache Reservation. The parties executed a contract to transfer these oil and gas interests, a contract which they entitled "Assignment, Bill of Sale and Conveyance" (1992 Assignment).

{3} At the time the parties executed the 1992 Assignment, the Tribe had not yet approved any prior assignment of these interests to Seller. As a consequence, Seller could not provide Buyer with an assignment approved by the Tribe either. The parties contemplated this problem in the 1992 Assignment by including language in the agreement to the effect that Seller would "execute and deliver such further assignments ... as may be required to vest the Oil and Gas Properties in [Buyer]." Despite Seller's inability to provide Buyer with an assignment approved by the Tribe, Buyer chose to actively operate the assigned leases anyway.

{4} In March 1997, the Tribe's Oil & Gas Administration requested Buyer to execute a form entitled "Assignment of Oil and Gas Lease–Operating Rights" (JAT–A–2 form). The Tribe made this request because in order to comply with federal law, any interest in oil and gas leases on Indian lands can be assigned or transferred only with the approval of the United States Secretary of the Interior. The executed JAT–A–2 forms must also be filed with and approved by the Bureau of Indian Affairs Superintendent.

{5} In May 1997, Buyer mailed Seller a letter in which it requested Seller to sign a JAT–A–2 form for each of the operating rights it had sold to Buyer under the 1992 Assignment. Seller expressed reservations about complying with Buyer's request on the grounds that the JAT–A–2 forms required Seller to make warranties and misrepresentations both to the Tribe and the federal government that, despite the 1992 Assignment, it was still the current owner of the oil and gas leases, the underlying leases were free of any encumbrances, and the leases had been fully performed. When the Tribe learned of Seller's reluctance to execute the JAT–A–2 forms, it threatened to exclude Buyer from operating the oil and gas leases until Buyer provided it with fully executed JAT–A–2 forms.

{6} In an effort to comply with the Tribe's request, Buyer filed suit against Seller for breach of contract and specific performance. Buyer filed the first of two motions for summary judgment in January 1998. At the hearing on Buyer's January motion, the trial judge denied the motion and suggested that the Tribe should change the tense of the language in the JAT–A–2 form to resolve Seller's reservations regarding the form's alleged misrepresentations. Buyer relayed the trial judge's suggestion to the Tribe, which subsequently refused to redraft the form based on its understanding of federal law.

{7} In April 1998, Buyer wrote the trial judge a letter in which it explained the Tribe's position. In that same letter, Buyer renewed its motion for summary judgment. After denying Buyer's motion, the trial court issued a letter ruling in which it dismissed Buyer's complaint on the basis that Buyer, in failing to join the Tribe in this lawsuit, had failed to join a necessary and indispensable party.

## DISCUSSION

### Necessary and Indispensable Party

■ {8} The trial court dismissed Buyer's complaint under Rule 1–019 NMRA 1999 for failure to join a necessary and indispensable party. In reviewing a trial court's dismissal under Rule 1–019, the proper standard of review is abuse of discretion. *See C.E. Alexander & Sons, Inc. v. DEC Int'l, Inc.,* 112 N.M. 89, 91, 811 P.2d 899, 901 (1991). "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims,* 1996–NMSC–78, ¶ 65, 122 N.M. 618, 930 P.2d 153.

### A. Joined if Feasible

{9} In accordance with Rule 1–019, we must first assess whether the trial court could properly conclude that the Tribe should be joined if feasible. *See Srader v. Verant,* 1998–NMSC–025, ¶¶ 18–19, 125 N.M. 521, 964 P.2d 82. Under Rule 1–019(A):

> A person who is subject to service of process shall be joined as a party in the action if:
>
> (1) in his absence complete relief cannot be accorded among those already parties; or
>
> (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may:
>
> (a) as a practical matter impair or impede his ability to protect that interest; or
>
> (b) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of his claimed interest. . . .

{10} The trial court's ruling was based on Rule 1–019(A), paragraphs (1) and (2). Although a trial court can invoke paragraph (1) as the sole basis for finding an absentee necessary, it is relatively rare for a trial court to do so. *See* 4 James Wm. Moore, et al., *Moore's Federal Practice* § 19.03[2][c] (3d ed.1999) [hereinafter Moore]. Instead, as in the case at bar, trial courts usually use paragraph (1) in conjunction with at least one of the other bases of compulsory party joinder. *See id.* Accordingly, we focus our attention on the trial court's use of paragraph (2).

### 1. *Tribe's Interest*

■ {11} Buyer argues that the Tribe is not a necessary party under Rule 1–019(A)(2) because its interests will not be harmed if

Seller is forced to sign the JAT–A–2 forms. Buyer's argument is predicated on the presumption that it will prevail on the merits. Based on this presumption, Buyer addresses the issue of whether the Tribe's interests *will be* injured if Seller *is* forced to sign the JAT–A–2 forms, but fails to address the issue of whether the Tribe's interests *might be* implicated if Seller is *not* forced to sign the JAT–A–2 forms. *See* Moore, *supra,* § 19.03[3][c] ("Rule 19 does not require an absolute showing that [a party's] interest *will necessarily* be harmed by nonjoinder; rather, it is concerned that nonjoinder 'may' result in such harm."). Without passing judgment on Buyer's argument, we hold that the trial court could reasonably conclude that if Buyer were to lose on the merits, the Tribe's economic interests might be implicated. *See Srader,* 1998–NMSC–025, ¶ 25, 125 N.M. 521, 964 P.2d 82 ("The [c]ourt may consider this type of economic impact caused by disputes between non-Indian parties when analyzing the practical effects of permitting litigation without a tribe's inclusion.").

{12} To illustrate this possibility, we observe: Buyer brought this lawsuit because Seller allegedly breached the 1992 Assignment. Under that contract, Buyer, as assignee-sublessee, is permitted to operate Seller's interests in certain oil and gas leases on the Jicarilla Apache Reservation. According to the Tribe, this contract may be enforceable as between Buyer and Seller, but it is not enforceable against the Tribe or the federal government. If the Tribe is correct, then the Tribe would lose any revenue that might be generated by the operation of the oil and gas leases because the Tribe and Seller are parties to a contract that permits Seller, as lessee, to operate the very leases it has attempted to sublease to Buyer. Put more succinctly, if the trial court decided that Seller did not have to sign the JAT–A–2 forms, Buyer could not operate the leases because to do so would be illegal and Seller could not operate the leases either because it has contracted its rights to Buyer. This type of economic effect implicates the Tribe's interests. *See id.*

### 2. *Impair or Impede*

{13} Buyer fails to address the ramifications that could result if the trial court held that Seller did not have to sign the JAT–A–2 Form in the Tribe's absence. We simply note that the interests of a necessary party will necessarily be impaired and impeded when a trial court rules in its absence, unless the interests of the absentee and one of the extant parties are truly identical. *See* Moore, *supra,* § 19.03[3][f]. In the case at bar, the Tribe has an interest not only in deriving economic benefits from the operation of oil and gas leases on its lands but also in protecting its sovereign right to litigate on its own behalf and in the forum of its choice. *See Srader,* 1998–NMSC–025, ¶ 33, 125 N.M. 521, 964 P.2d 82,. We thus hold that the trial court could reasonably conclude that the interests of the Tribe and Buyer are not truly identical, and that the Tribe's interests might therefore be impaired or impeded if the trial court entered a judgment in its absence.

### B. Joinder Impossible

{14} The next issue we must address is whether the trial court could have reasonably concluded that the Tribe's joinder is not possible. *See* Rule 1–019(B). We observe that joinder is normally feasible; however, it may become unfeasible if it is somehow precluded by jurisdictional barriers. *See Srader,* 1998–NMSC–025, ¶ 19, 125 N.M. 521, 964 P.2d 82. Sovereign immunity is one such jurisdictional barrier. *See id.* ¶ 29.

{15} The trial court reasonably concluded that it could not join the Tribe in this lawsuit because of the doctrine of tribal sovereign immunity. As sovereigns, Indian tribes like the Jicarilla Apache Tribe are immune from suit absent Congressional authorization or an effective waiver in tribal, state, or federal court. *See id.* Buyer filed its complaint in state court. No waiver exists that permits suit against the tribes in state court, and no Congressional authorization has been given. *See id.* As a result, the trial court properly concluded that the doctrine of tribal sovereign immunity precludes joinder of the Tribe. *See id.*

**530**

## C. Determination by Court When Joinder is not Feasible

{16} In light of the fact that the Tribe cannot be joined, we must next decide whether the trial court could reasonably conclude that it should dismiss Buyer's lawsuit instead of proceeding without the Tribe. *See* Rule 1–019(B). The factors the trial court must consider include:

> first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the [Buyer] will have an adequate remedy if the action is dismissed for nonjoinder.

*See id.* We have already concluded that the trial court could reasonably weigh factors one through three in favor of dismissing Buyer's lawsuit in the Tribe's absence, so we will not revisit those factors here. *See Srader*, 1998–NMSC–025, ¶¶ 31–32, 125 N.M. 521, 964 P.2d 82. We finally note that the trial court could reasonably conclude that the fourth factor also weighs against Buyer, and that equity and good conscience do not suggest a different result. *See id.* ¶¶ 33–34 ("[T]he public interest in protecting tribal sovereign immunity surpasses a [Buyer's] interest in having an available forum for suit. . . . The majority of case law suggests that Rule 1–019 requires dismissal when an immune tribe has substantial interests in the litigation."). Accordingly, we cannot say that the trial court abused its discretion.

## CONCLUSION

{17} For the reasons stated, we affirm.

{18} **IT IS SO ORDERED.**

DONNELLY and APODACA, JJ., concur.