3 P.3d 135

2000-NMCA-043

**Jean A. PETERSON as Personal Representative of the Estate of Jeffrey Oelcher, Plaintiff–Appellant,**

v.

**WELLS FARGO ARMORED SERVICES CORP., Defendant–Appellee.**

**No. 19,644.**

Court of Appeals of New Mexico.

March 20, 2000.

Certiorari Denied, No. 26,282, May 9, 2000.

Hazen H. Hammel, Cates & Hammel, P.C., Los Lunas, Mark M. Rhodes, Rhodes & Salmon, P.C., Albuquerque, for Appellant.

J.E. Casados, Gallagher, Casados & Mann, P.C., Albuquerque, for Appellee.

## OPINION

WECHSLER, Judge.

{1} Jean Peterson (Plaintiff), personal representative of the estate of Jeffrey Oelcher, appeals from the trial court's order granting summary judgment in favor of Defendant Wells Fargo Armored Service Corporation (Wells Fargo). In essence, the order determines that Wells Fargo complied with the insurance provisions of the Workers' Compensation Act and therefore workers' compensation is the exclusive remedy for the death of Jeffrey Oelcher, Plaintiff's son. *See* NMSA 1978, §§ 52-1-6(C) & (D) (1990) (effective January 1, 1992), 52-1-8 (1989), 52-1-9 (1973); *Harger v. Structural Servs., Inc.,* 121 N.M. 657, 666, 916 P.2d 1324, 1333 (1996). We conclude that Wells Fargo did not substantially comply with the filing provisions of the Act and that summary judgment is inappropriate and therefore reverse and remand.

*Facts and Procedural Posture*

{2} The following facts are assumed for purposes of summary judgment; they may still be subject to some dispute in the trial court. On August 25, 1994, Wells Fargo employed Jeffrey Oelcher as a driver-guard. On that day, Oelcher and a partner had been assigned a Budget Rentals van to use in their route from Albuquerque to Socorro, Gallup, and Grants and back to Albuquerque. Two men in a pickup truck ambushed the van on a back road. One of the men, who was lying in the bed of the pickup, fired a gun at the van. The bullet went through the windshield, which was not armored or in any other way reinforced, and struck Oelcher in the head. Oelcher died either immediately or a very short time after being shot.

{3} Oelcher was survived by his mother, Plaintiff; his stepfather, Ken Peterson; his fiancé, April Dunton; and his two minor children born to April Dunton. On August 30, 1994, Ken Peterson called the Workers' Compensation Administration (the Administration) and asked whether Wells Fargo or Borg–Warner, its parent company, had workers' compensation insurance. He was told that the Administration's records did not show that either company had workers' compensation insurance. The next day, Sandy Offerdahl of Travelers Insurance (Travelers), wrote Dunton. The letter told Dunton that Travelers was the workers' compensation carrier for Wells Fargo and asked Dunton to contact Offerdahl. During September 1994, Offerdahl and Dunton spoke by telephone several times. Offerdahl indicated that she wanted copies of the birth certificates of the children so that she could begin processing workers' compensation benefits. Ultimately, on September 15, 1994, Dunton told Offerdahl that she wanted to appeal the amount of the benefits, that she was represented by an attorney, and that Plaintiff had advised her not to send Offerdahl copies of the birth certificates. On September 20, 1994, Offerdahl sent the attorney a letter identifying Travelers as the workers' compensation carrier and asking for birth certificates. The attorney never responded.

{4} In February 1995, Plaintiff, as personal representative of her son's estate, filed a

complaint and then an amended complaint in district court seeking damages for wrongful death. As to Wells Fargo, the complaint alleged that the "Big Red" armored cars used by Wells Fargo had frequent mechanical difficulties and, as a result, Wells Fargo had used ordinary rental vans from Budget on some of its routes, including the route Oelcher was on at the time of his death.

{5} On August 1, 1995, the trial court ordered Wells Fargo to produce evidence, before September 13, 1995, of its compliance with the insurance provisions of the Act. Thereafter, Wells Fargo's attorney allowed Plaintiff's attorneys to inspect the copy of the policy that he had. Two years later, at the hearing on the motion for summary judgment, Wells Fargo's attorney informed the trial court that at the time Plaintiff's attorneys looked at the policy, the terms and conditions of the policy were not available.

{6} Also in September 1995, Plaintiff's attorneys contacted the Administration to determine if a notice of accident report, referred to as an E–1, had been filed. On September 22, 1995, Alex Maestas, then Records Manager for the Administration, searched the computer data base and the archives and told the attorneys that no such report had been filed. Maestas executed an affidavit on that date to that effect. Two years later, Maestas did the same search and found an E–1 for the incident. Maestas could not explain why he had been unable to find the report two years earlier. Although the statute requires that a copy of the E–1 be served on the worker, *see* NMSA 1978, § 52–1–58(A) (1990), it is undisputed that no service had been made.

{7} On September 15, 1995, Plaintiff filed a motion for leave to amend her complaint to add a claim of negligence against Wells Fargo. The motion indicated that Wells Fargo had failed to produce evidence that it had complied with the insurance provisions of the Act and that it still had not filed proof of coverage as required by the Act. Plaintiff attached a second amended complaint to the motion. In addition to the allegations previously made concerning the failure to keep the Big Red armored vans in good repair, the second amended complaint specifically alleged that Wells Fargo had failed to comply with the provisions of the Act concerning insurance and therefore Plaintiff was entitled to sue Wells Fargo for its alleged negligence.

{8} On November 15, 1995, Wells Fargo filed proof of insurance coverage for calendar year 1994 with the Administration. On November 29, 1995, the trial court granted the motion to amend the complaint. The second amended complaint was formally filed on December 5, 1995.

{9} Almost two years later, in September 1997, Wells Fargo filed a motion for summary judgment. Plaintiff filed a response. The trial court held argument on the motion on May 1, 1998. On July 17, 1998, the trial court filed an order granting summary judgment in favor of Wells Fargo. This appeal followed.

*Applicable Statutory Provisions*

{10} The Workers' Compensation Act (the Act) is, by statute, the exclusive remedy for on-the-job injuries or deaths. However, in order to take advantage of the exclusive remedy provisions of the Act, an employer must comply with the provisions of the Act concerning insurance. *See* §§ 52–1–6(C) & (D); 52–1–8; 52–1–9. If the employer fails to comply with those provisions, the worker can sue the employer either for compensation benefits or for damages in tort caused by the employer's negligence. *See Harger,* 121 N.M. at 666, 916 P.2d at 1333. The worker has the choice of remedy.

{11} The provisions of the Act concerning insurance are relatively straightforward. Employers are given a choice. They may either qualify as self-insured pursuant to the provisions of the Act and the regulations of the Administration, or they may purchase insurance to cover their potential liability under the Act. *See* § 52–1–4; 11 NMAC 4.8.8 (1996); *In re Mission Ins. Co.,* 112 N.M. 433, 435, 816 P.2d 502, 504 (1991); *Addison v. Tessier,* 62 N.M. 120, 125, 305 P.2d 1067, 1069–70 (1957). The standards for allowing employers to self-insure their liability are relatively high, requiring, among other things, a tangible net worth in excess of $2.5 million, at least three years in busi-

ness, a risk management program, and a workers' compensation specific occurrence or aggregate insurance with retention of $250,000 and statutory upper limits. *See* 11 NMAC 4.8.8.1.

{12} If the employer chooses to obtain insurance, the insurance policy must make the insurer directly and primarily liable to the injured worker or his dependents. *See* § 52–1–4. All states require that the compensation liability be insured, either through private insurance, self-insurance, or insurance provided by state funds. *See* 9 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 92.11, at 17–1 to 17–5 (1999). The rationale is straightforward: to make sure that injured workers or their dependents will be able to collect the benefits due to them even if the employer goes out of business or becomes bankrupt. *See id.* § 92.12. In addition, the Act requires the employer to file proof of insurance coverage with the director of the Administration. *See* § 52–1–4(A); 11 NMAC 4.11.8 (1996).

*Filling of Proof of Coverage*

{13} Plaintiff contends that summary judgment was improper because there are disputed issues of fact concerning whether Wells Fargo substantially complied with the statutory requirement that it file proof of insurance coverage with the Administration. *See* § 52–1–4; 11 NMAC 4.11.8; *see also Roth v. Thompson*, 113 N.M. 331, 334–35, 825 P.2d 1241, 1243–44 (1992) (explaining that summary judgment is improper if there are disputed issues of material fact). In the trial court and on appeal, Wells Fargo offered three arguments on this issue. First, it argued that it complied with the statute by filing proof of coverage with the National Counsel for Compensation Insurance (NCCI.). Second, it argued that by filing proof of coverage in November 1995, it substantially complied with the statute. Third, it argued that the date that it complied with the filing requirements does not matter because Plaintiff was on notice that benefits were available. For the following reasons, we conclude that summary judgment was inappropriate. *See Rummel v. Lexington Ins. Co.*, 1997–NMSC–041, ¶¶ 16–17, 123

N.M. 752, 945 P.2d 970 (recognizing that summary judgment is inappropriate if the trial court misapplied the law).

{14} As this Court has observed in a somewhat different context, "[s]ubstantial compliance means that a court should determine whether the statute has been followed sufficiently so as to carry out the intent for which the statute was adopted and accomplishes the reasonable objectives of the statute." *Vaughn v. United Nuclear Corp.*, 98 N.M. 481, 485, 650 P.2d 3, 7 (Ct.App.1982) (analyzing substantial compliance under the Subsequent Injury Act); *see also Gambrel v. Marriott Hotel*, 112 N.M. 668, 672, 818 P.2d 869, 873 (Ct.App.1991) (measuring substantial compliance by evaluating the purposes of the Subsequent Injury Act). The purpose of the mandatory filing requirement is to notify a worker that the employer has complied with the insurance provisions of the Act. *See Shope v. Don Coe Constr. Co.*, 92 N.M. 508, 510, 590 P.2d 656, 658 (Ct.App.1979). With the filing, the worker is conclusively presumed to have accepted the Act. *See id.; cf. Junge v. John D. Morgan Constr. Co.*, 118 N.M. 457, 464, 882 P.2d 48, 55 (Ct.App.1994) (holding that sole proprietor's filing on behalf of company did not establish proprietor's acceptance as an employee). The filing requirement also serves as a benefit to the worker because, if followed, the worker will know that the employer has insurance and the name and address of the responsible insurer. *See Quintana v. Nolan Bros., Inc.*, 80 N.M. 589, 590, 458 P.2d 841, 842 (Ct.App. 1969); *see also Junge*, 118 N.M. at 464, 882 P.2d at 55 (stating that filed certificates were for benefit of workers, not employer).

1. *NCCI Filing*

{15} We first examine whether filing proof of coverage with NCCI establishes substantial compliance. We assume without deciding that the Administrator considered this method of filing acceptable in 1994. We note that the proof of coverage in question shows the named insured as Baker Industries and makes no mention of either Wells Fargo or Borg–Warner, the parent company of Wells Fargo. As a result, it is not surprising that the Administration informed Ken Peterson

that it had no record of insurance for Wells Fargo or Borg–Warner. We fail to understand how the NCCI certificate informed the employees of Wells Fargo or their dependents of the fact that Wells Fargo had obtained compensation insurance if the Administration could not ascertain coverage from the same information. Thus, in these circumstances, the filing with the NCCI would not suffice to inform Wells Fargo's employees of coverage and was not, therefore, substantial compliance with the filing requirement.

### 2. *November 15, 1995 Filing with Administration*

{16} We next address the question of whether Wells Fargo substantially complied with the filing requirement by filing a certificate of coverage with the Administration on November 15, 1995. In the trial court, Wells Fargo argued that Plaintiff did not file the negligence action in this case until December 5, 1995, and therefore the November 1995 filing constituted substantial compliance. In response, Plaintiff argued that the lawsuit was filed in February 1995 and her motion to amend the complaint was filed in September 1995, which related back to the initial filing. *See* Rule 1–015(C) NMRA 2000. We agree with Plaintiff that Wells Fargo's November 1995 filing was not substantial compliance, although for somewhat different reasons.

{17} We note initially that all the cases that have found substantial compliance with the filing requirement have involved significantly shorter periods of time than in this case. *Compare Mirabal v. International Minerals & Chem. Corp.*, 77 N.M. 576, 578, 425 P.2d 740, 742 (1967) (filing forty days after accident and eight months before any suit filed); *Shope*, 92 N.M. at 509, 590 P.2d at 657 (filing roughly one month after the accident and roughly six weeks before common law claim filed); *Quintana*, 80 N.M. at 589, 458 P.2d at 841 (filing seventy-six days after accident and some (unspecified) amount of time before suit filed); *with Security Trust v. Smith*, 93 N.M. 35, 37–38, 596 P.2d 248, 250–51 (1979) (holding that filing proof of coverage eleven months after the accident and six weeks after common law action com-

menced was not substantial compliance); *Montano v. Williams*, 89 N.M. 86, 87–88, 547 P.2d 569, 570–71 (Ct.App.1976), *aff'd*, 89 N.M. 252, 550 P.2d 264 (1976) (failing to file proof of insurance or produce policy during ensuing common law litigation was not substantial compliance). Moreover, in none of those cases has the plaintiff sought to amend the complaint after suit was filed.

{18} As we have stated, in addition to notice, the purpose of the filing requirement is to provide information to the injured worker. In circumstances of death, this purpose extends to the worker's dependents. In this case, Wells Fargo did not meet this informational purpose solely by satisfying the technical filing requirement in November 1995. It produced insurance documents for Plaintiff in September 1995 only after being ordered by the trial court to produce evidence of its compliance with the Act's insurance provisions.

{19} The documents that Well Fargo's produced included pages of a Continental Insurance Company (Continental) policy that included workers' compensation insurance applicable in New Mexico during 1993–1994. The first page shows the insured as Baker Industries, a subsidiary which was dissolved prior to Oelcher's death; however, someone had crossed out Baker Industries and written in by hand "Borg–Warner Security Corporation." The production also included a revised schedule A that indicated that the named insured is completed to read Borg–Warner Security Corporation and Wells Fargo Armored, among others. This partial production of only three pages of the Continental policy was inconclusive as to whether Wells Fargo had workers' compensation insurance coverage for its employees on August 24, 1994. The inconclusive nature of the September 1995 production was borne out by the documents Wells Fargo later filed as a supplement to its motion for a summary judgment. These later documents included an endorsement to the Continental policy which specifically provided that the policy covered only Baker Industries and specifically excluded all other Borg–Warner Corporation operations from the policy. The endorsement indicates that Baker Industries or its insur-

ance agent may issue certificates of insurance to parties that have an interest in the Continental policy, but Wells Fargo did not file any such certificate of insurance.

■ {20} Substantial compliance with the mandatory filing requirement exists when the circumstances accomplish the same purposes as the filing requirement. *See Shope*, 92 N.M. at 510, 590 P.2d at 658. The rationale for this result is evident: when an employer maintains workers' compensation insurance and provides information to an injured worker concerning the insurance that enables the worker to obtain compensation, the purposes of the Act are fulfilled and the employer is entitled to the Act's protections from suits in tort. *See generally id.* On the other hand, when an employer does not provide certainty that coverage exists, the worker or the worker's dependents do not know how to proceed to obtain compensation for an injury. When this uncertainty continues for an extended period of time, the likely result is litigation rather than the efficient resolution of the claim that the Act contemplates. *See Mirabal*, 77 N.M. at 578, 425 P.2d at 742 (stating that one purpose of the prior workers' compensation act was to avoid uncertainty in litigation).

■ {21} In general, if the employer files the appropriate document before the worker files a tort suit, the employer has provided sufficient certainty and has substantially complied with the filing requirement such that the worker cannot sue in tort. *Compare Mirabal*, 77 N.M. at 578, 425 P.2d at 742 (holding that employer substantially complied by paying benefits and filing the policy eight months before the worker filed a tort suit); *Shope*, 92 N.M. at 510–11, 590 P.2d at 658–59 (holding that employer substantially complied even though it filed the proof of insurance fifteen days late because the filing was two months before the common law suit was filed); *Quintana*, 80 N.M. at 590, 458 P.2d at 842 (holding that employer substantially complied even though proof of coverage was filed after the accident that caused the employee's death but before employee filed suit); *with Security Trust*, 93 N.M. at 37–38, 596 P.2d at 250–51 (holding

no compliance where employer did not file the appropriate document until after the worker filed a tort suit); *Montano*, 89 N.M. at 90–91, 547 P.2d at 573–74 (holding no compliance where employer never filed an appropriate document and never produced a policy of compensation insurance). However, the substantial compliance doctrine requires not only that the employer file proof of insurance coverage before the worker files a suit, but also that the employer actually had maintained workers' compensation insurance coverage for its employees as of the date of the injury in question. *See Mirabal*, 77 N.M. at 578, 425 P.2d at 742 (observing written evidence of workers' compensation coverage in record); *Shope*, 92 N.M. at 510, 590 P.2d at 658 ("We must keep in mind that defendant actually had compensation insurance within the mandatory 30 day period, but was late in filing this certificate by 15 days."); *Quintana*, 80 N.M. at 589, 458 P.2d at 841 (noting that employer had policy at time of accidental injury). The doctrine contemplates that the failure of an employer to file in a timely manner is due to a technical error that is promptly corrected. *See Quintana*, 80 N.M. at 590, 458 P.2d at 842 (noting that employer's "technical delay" did not permit wrongful death suit); *Mirabal*, 77 N.M. at 578, 425 P.2d at 742 ("It would seem contrary to legislative intent that any technical delay which in no way prejudices a claimant would give rise to a common-law suit.").

{22} It is not clear whether Wells Fargo's failure to file proof of insurance was due to technical or substantive reasons. We do not decide that question on the record before us. Regardless, Wells Fargo's failure to promptly correct the problem caused litigation surrounding insurance coverage, precisely the uncertainty that the filing statute addresses. Wells Fargo then compounded the problem with its incomplete and inconclusive September 1995 production which led to Plaintiff's filing the motion to amend the complaint to add a negligence claim against Wells Fargo. On November 15, 1995, at a stage of the litigation when Wells Fargo had previously produced documentation concerning its coverage and Plaintiff had sought to amend her complaint, the filing of proof of coverage no

longer had any substantive value. Because the purpose of the Act's filing requirement had already either been met or frustrated, the November 15, 1995 filing was not substantial compliance with the Act.

### 3. *Actual Notice*

{23} Wells Fargo also argues that Plaintiff had actual notice that compensation benefits were available due to the contacts between Offerdahl and Dunton. In addition, Wells Fargo points to a facsimile communication to Plaintiff's attorneys from the Administration in August 1995 identifying the insurance policy in question and providing the name and address of the insurer. Wells Fargo relies on case law construing actual notice as sufficient to show substantial compliance with the filing requirement. *See Shores v. Charter Servs., Inc.,* 106 N.M. 569, 570, 746 P.2d 1101, 1102 (1987); *Baldwin v. Worley Mills, Inc.,* 95 N.M. 398, 399–400, 622 P.2d 706, 707–08 (Ct.App.1980).

{24} We recognize that the parties do not dispute that contacts between Offerdahl and Dunton took place. However, we are not persuaded by the argument that these contacts constituted actual notice. We agree with Wells Fargo that the cases do not require knowledge that benefits are available; they require that Plaintiff have "actual knowledge, and thus notice, of the existence of a workmen's compensation policy of insurance." *Baldwin,* 95 N.M. at 400, 622 P.2d at 708. However, in September 1995, Plaintiff had been given conflicting information concerning the existence of a policy. The Administration had told Ken Peterson that Wells Fargo did not have compensation insurance. Later, Offerdahl told Dunton that Travelers was the compensation carrier. Still later, the Administration told Plaintiff's attorneys that Continental was the compensation carrier. When all of these facts are considered, reasonable minds could differ as to whether Plaintiff had actual knowledge of the existence of a policy of compensation insurance. Thus, Wells Fargo was not entitled to summary judgment on this basis.

{25} In an argument that would avoid the problems engendered by the provision of conflicting information, Wells Fargo additionally contends that if Peterson did not have actual knowledge of the compensation insurance, she was at least on notice such that she should inquire further. The record, however, shows that Plaintiff did inquire further, but that Wells Fargo resisted her efforts to obtain a copy of the insurance policy. When Wells Fargo finally provided a copy for Plaintiff's inspection, it was an incomplete copy. We therefore find no merit in Wells Fargo's argument.

### *Conclusion*

{26} We reverse the order granting summary judgment in favor of Wells Fargo and remand to the district court for further proceedings consistent with this opinion.

{27} **IT IS SO ORDERED.**

APODACA and BOSSON, JJ., concur.