**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Opinion Number: 2020-NMSC-006**

**Filing Date: January 16, 2020**

**No. S-1-SC-37034**

**GLORIA MENDOZA,**

Worker-Respondent,

v.

**ISLETA RESORT AND CASINO,**
**HUDSON INSURANCE, and**
**TRIBAL FIRST,**

Employer/Insurer-Petitioners,

and

**STATE OF NEW MEXICO UNINSURED**
**EMPLOYERS' FUND,**

Statutory Third Party.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Leonard J. Padilla, Workers' Compensation Judge**

Released for Publication April 7, 2020.

Barnhouse Keegan Solimon & West LLP
Dolph Barnhouse
Kelli J. Keegan
Christina S. West
Albuquerque, NM

for Petitioners

Law Office of LeeAnn Ortiz, LLC
LeeAnn Ortiz
Albuquerque, NM

for Respondent

**OPINION**

**BACON, Justice.**

**{1}** This appeal asks us to resolve three questions: (1) whether the Pueblo of Isleta, in entering the 2015 Indian Gaming Compact, expressly and unequivocally waived its tribal sovereign immunity to permit jurisdiction shifting of workers' compensation claims originating on tribal land to the Workers' Compensation Administration; (2) whether Gloria Mendoza, (Worker) as a non-party to the Compact, can challenge the Pueblo's compliance with the Compact; and (3) whether Isleta Casino, an entity of the Pueblo of Isleta, is an indispensable party to a lawsuit against its workers' compensation insurers. We hold that there is no definitive jurisdiction shifting language in the Compact, there is no private right of action for Worker to mandate Compact compliance, and Isleta Casino, as a sovereign entity, is an indispensable party to Worker's claim, thus compelling dismissal of Worker's claim in its entirety.

**{2}** Worker filed a workers' compensation claim with the New Mexico Workers' Compensation Administration (WCA) after she suffered an on-the-job injury at Isleta Resort & Casino. Isleta Casino is located on the Pueblo of Isleta (the Pueblo). Because Worker's injury occurred within the Pueblo's sovereign jurisdiction, the WCA dismissed Worker's claim for lack of jurisdiction, referencing the Pueblo's tribal sovereign immunity. On account of the Pueblo's sovereign status, Worker's complaint was dismissed as to all parties, which included Hudson Insurance Company (Isleta Casino's insurer) and Tribal First (Hudson's third-party administrator) (hereinafter, collectively "Petitioners"[1]). Worker appealed the WCA's dismissal to the New Mexico Court of Appeals, who reversed the findings of the WCA and remanded the case back to the WCA for further proceedings. *Mendoza v. Isleta Resort and Casino*, 2018-NMCA-038, ¶ 1, 419 P.3d 1256.

**{3}** In response to the Court of Appeals' decision, Petitioners filed a petition for writ of certiorari with this Court. We granted certiorari and proceed to address the aforementioned issues. Due to the unusual procedural posture of this case and the lack of record before us, we narrowly limit the holding to the facts presented here. With that consideration, we reverse the Court of Appeals' opinion in its entirety and affirm the WCA's dismissal of Worker's claim. The doctrine of sovereign immunity dictates our analysis and prohibits the claim from proceeding against any party in the WCA.

## I.    BACKGROUND

**{4}** Worker injured her knee while working as a custodial porter at Isleta Casino. On the day of the accident, she filed a notice of accident form with her employer. In response to the notice of accident, Worker received correspondence from Tribal First informing her that her claim was denied. According to the letter, Worker's claim was

---

[1]Hudson Insurance Company, Tribal First, and Isleta Casino are all collectively referenced herein as "Petitioners," as these parties are all represented by the same attorneys and advance their arguments collectively. The State of New Mexico Uninsured Employers' Fund is a statutory third-party, but has not participated in this appeal.

denied because, "[p]er Isleta Resort & Casino['s] work injury program, claims are to be reported within 24 hours. Since you did not report your claim timely per Isleta Resort & [Casino's] work injury program, your claim is denied." After receiving the letter of denial, Worker filed a claim with the WCA. In response to this claim, Tribal First sent a letter to the WCA stating that because Isleta Casino is a tribal entity that retains sovereign immunity preventing it from being sued in state court, the WCA lacked jurisdiction over the matter.

**{5}** Despite the assertion of sovereign immunity, the WCA held a mediation conference in order to address Worker's claim. Following the mediation, the mediator presented her non-binding observations that (1) Hudson is the workers' compensation insurer for Isleta Casino, which was demonstrated by the filing of the Acord Certificate of Insurance with the WCA; (2) the Tribal First adjuster appeared telephonically and stated repeatedly that the WCA lacked jurisdiction to hear the case because of tribal sovereignty; (3) Tribal First had accepted premiums from the Pueblo but did not pay Worker's claim; and (4) Worker's counsel produced a copy of the Pueblo's tribal code, which does not mention workers' compensation as part of its jurisdiction.

**{6}** After reviewing the information from the mediator, the Director presented his recommended resolution, which provided in part:

- Because of the agreement between the Pueblo and the State of New Mexico (the Compact), the WCA has jurisdiction over Worker's claim;

- Tribal First and Hudson were the insurers for Isleta Casino at the time of Worker's injury;

- Worker's claim is compensable under the WCA, as it occurred on the job and in the course of employment;

- The Pueblo waived its sovereign immunity by entering into the Compact with the State; and

- Tribal First is acting in bad faith and engaging in unfair claims practices.

In response, Isleta Casino and Tribal First filed a notice of rejection of recommended resolution and a motion to dismiss for lack of subject matter jurisdiction, citing the Pueblo's sovereign immunity.[2]

**{7}** In their motion to dismiss, Petitioners stated two reasons in support of the WCA's lack of jurisdiction. First, they contended that the WCA lacked jurisdiction because tribal sovereign immunity barred the claim. Second, they argued that the Pueblo had exclusive jurisdiction over workers' compensation claims made under its insurance policy. Following those arguments, Petitioners asserted that because the WCA lacked

---

[2]After Worker initiated her case, a certificate of insurance was filed with the WCA listing Hudson as the worker's compensation insurance carrier for Isleta Casino at the time of Worker's accident.

jurisdiction to adjudicate Worker's claim, it necessarily lacked jurisdiction to adjudicate bad faith claims against Hudson and Tribal First.

**{8}** In response to the motion to dismiss, Worker argued that the Compact contained an express and unequivocal waiver of sovereign immunity that permitted her to bring a claim in the WCA. In support of her argument, Worker cited to Section 4(B)(6) of the Compact, which provides that the Pueblo shall adopt laws

> requiring the Tribe, through its Gaming Enterprise or through a third-party entity, to provide to all employees of the Gaming Enterprise employment benefits, including, at a minimum, sick leave, life insurance, paid annual leave or paid time off and medical and dental insurance as well as providing unemployment insurance and workers' compensation insurance through participation in programs offering benefits at least as favorable as those provided by comparable State programs, and which programs shall afford the employees due process of law and shall include an effective means for an employee to appeal an adverse determination by the insurer to an impartial forum, such as (but not limited to) the Tribe's Tribal Court, which appeal shall be decided in a timely manner and in an administrative or judicial proceeding and *as to which no defense of tribal sovereign immunity would be available*; and provided that to fulfill this requirement the Tribe may elect to participate in the State's program upon execution of an appropriate agreement with the State[.]

NMSA 1978, § 11-13-app. (2015) (emphasis added). Worker asserted that even if the Pueblo did retain sovereign immunity, such status did not extend to its insurer. Additionally, she argued that because the Pueblo had no workers' compensation program in place, the state program became the default. Following Petitioners' reply, the WCA granted the motion to dismiss.

**{9}** The WCA provided three reasons for granting Petitioners' motion to dismiss. First, it found that within the Compact, the Pueblo did not expressly and unequivocally waive sovereign immunity, such that it could be sued in the WCA. Next, it determined that Worker did not have standing to challenge the terms of the Compact because the Compact is a contract between the Pueblo and the State. Finally, it concluded that Isleta Casino was an indispensable party to the claim, and thus, the claim could not proceed absent its joinder. The order of dismissal summarily disposed of Worker's claim against all parties.

**{10}** Following the dismissal, Worker filed a notice of appeal with the Court of Appeals. The Court of Appeals held that (1) the Compact between the Pueblo and the State of New Mexico set forth an express and unequivocal waiver of sovereign immunity as to workers' compensation claims; (2) even if the Compact did not contain an express waiver of sovereign immunity, "Worker ha[d] a right to pursue her workers' compensation claim directly against Hudson and [Tribal First]"; (3) even if the Pueblo had not waived sovereign immunity, it was not an indispensable party, and its absence

did not prevent Worker's claim from proceeding; and (4) Worker was a third-party beneficiary to the Pueblo's workers' compensation policy. *Mendoza*, 2018-NMCA-038, ¶¶ 29-30, 37, 44. In response to the Court of Appeals' decision, Petitioners petitioned this Court for certiorari.

**{11}** In our review of this case, we note the particular deficiencies in the record that, in part, direct our analysis. Not only does the record lack an insurance contract between Petitioners for us to consider, no evidence of a tribal workers' compensation program or agreement between the Pueblo and the State exists in the record. Here, the record was so inadequately developed that we are unable to determine, with the limited information before us, what, and to what extent, interests of the Pueblo could be implicated should the case proceed absent its joinder. Because of these deficiencies, we are left to speculate about these potential interests of the Pueblo, whether such indeterminate interests could impact the Pueblo's sovereign immunity absent joinder, and where to remand the case to make such a determination. Thus, our conclusion is dictated by these particularities.

## II.      STANDARD OF REVIEW

**{12}** The Court applies de novo review of a decision to grant or deny a motion to dismiss for lack of subject matter jurisdiction due to sovereign immunity. *Gallegos v. Pueblo of Tesuque*, 2002-NMSC-012, ¶ 6, 132 N.M. 207, 46 P.3d 668.

## III.     DISCUSSION

### A.      On Its Face, the Compact Does Not Contain an Express and Unequivocal Waiver of Immunity

**{13}** Concluding the Compact contains no express and unequivocal waiver of the Pueblo's immunity from suit in the WCA, we reverse the Court of Appeals and affirm the WCA's dismissal of Worker's claim for lack of jurisdiction. This holding is premised on the plain language interpretation of Section 4(B)(6) of the Compact, NMSA 1978, § 11-13-app. (2015), negotiated pursuant to the Indian Gaming Regulatory Act (IGRA). *See* 25 U.S.C. §§ 2701-2721 (2018).

**{14}** IGRA was enacted by Congress in order "to create a framework for states and Indian tribes to cooperate in regulating on-reservation tribal gaming[.]" *Navajo Nation v. Dalley*, 896 F.3d 1196, 1201 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 1600 (2019). IGRA was Congress' attempt "to strike a balance between the rights of tribes as sovereigns and the interests that states may have in regulating sophisticated forms of gambling." *Gallegos*, 2002-NMSC-012, ¶ 10 (internal quotation marks and citation omitted). In order to negotiate matters related to tribal gaming, IGRA allows tribes and states to enter into gaming compacts. *Dalley*, 896 F.3d at 1201. Absent an operative gaming compact between a tribe and a state, Class III gaming is prohibited. *Id.* Class III gaming is the most profitable form of gaming and "includes casino games, slot machines, and horse racing." *Id.* (quoting *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 785 (2014)). "Importantly, IGRA expressly prescribes the matters that are

permissible subjects of gaming-compact negotiations between tribes and states." *Dalley*, 896 F.3d at 1201-02; *see* 25 U.S.C. § 2710(d)(3)(C). Because Isleta Casino is a Class III gaming facility, the State of New Mexico and the Pueblo entered into a gaming compact.

**{15}** The Compact between the State of New Mexico and the Pueblo was last revised in 2015. S.J. Res. 19, 52nd Leg., 1st Sess. (N.M. 2015). The Pueblo became a signatory to the Compact on July 28, 2015, which made it the operative Compact at the time of Worker's injury. *See* Indian Gaming, 80 Fed. Reg. 44,992-01 (July 28, 2015).

**{16}** Worker contends that the Compact contains an express and unequivocal waiver of tribal sovereign immunity as to workers' compensation claims. *See R & R Deli, Inc. v. Santa Ana Star Casino*, 2006-NMCA-020, ¶ 10, 139 N.M. 85, 128 P.3d 513 ("A tribe is free to waive its sovereign immunity, but [the waiver] must be express and unequivocal."). Worker asserts that Section 4(B)(6) contains an express and unequivocal waiver as to both jurisdiction and liability allowing her to pursue a claim in the WCA.

**{17}** Petitioners claim that Section 4(B)(6) is simply an agreement between the State of New Mexico and the Pueblo that a workers' compensation program will be implemented—a program in which no claim of sovereign immunity as to liability, rather than jurisdiction, will be available to the Pueblo. They concede that the applicable language references a waiver of sovereign immunity, but they contend the waiver is only operative in their own tribal forum, preventing the Pueblo from asserting the defense of sovereign immunity as to liability in a workers' compensation claim brought in the Pueblo's tribal court. Although there is no evidence of an operative tribal workers' compensation program in the record, we agree with Petitioners, and find no jurisdiction shifting language in Section 4(B)(6). Federally recognized tribes and pueblos are "domestic dependent nations that exercise inherent sovereign authority." *Hamaatsa, Inc. v. Pueblo of San Felipe*, 2017-NMSC-007, ¶ 19, 388 P.3d 977 (internal quotation marks omitted) (quoting *Bay Mills*, 572 U.S. at 788). As domestic dependent nations, they "are subject to plenary control by Congress." *Hamaatsa*, 2017-NMSC-007, ¶ 19. Because Congress possesses plenary control over tribes, federal law prohibits states from redefining the doctrine of sovereign immunity. *Id.* ¶ 21. It is well established that "tribal immunity is a matter of federal law and is not subject to diminution by the States." *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 756 (1998). However, tribal sovereign immunity is not absolute. *See Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978).

**{18}** Tribal sovereign immunity can be waived one of two ways: Congress can expressly abrogate tribal sovereign immunity through legislation, *Bay Mills*, 572 U.S. at 790, or tribes can waive immunity through an express and unequivocal waiver, *Gallegos*, 2002-NMSC-012, ¶ 7. *See also Kiowa Tribe*, 523 U.S. at 754 ("As a matter of federal law, an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity."). Absent congressional authorization or an express and unequivocal waiver by a tribe, state courts cannot hear suits against tribes.

*Gallegos*, 2002-NMSC-012, ¶ 7.  It is undisputed that here, Congress has not abrogated the Pueblo's sovereign immunity as to workers' compensation; therefore, we turn to whether the Pueblo has expressly and unequivocally waived its immunity, thus permitting workers' compensation cases to be brought in the WCA.

**{19}**   We agree with Petitioners and determine that Section 4(B)(6) does not contain an unambiguous, express, and unequivocal waiver, so as to permit jurisdiction shifting for workers' compensation claims.  This conclusion is supported by both our independent interpretation of Section 4(B)(6) and our reading of the Compact as a whole.

**{20}**   First, when interpreting the Compact, we see no intent by the Pueblo to shift jurisdiction for workers' compensation claims to the WCA.  The Compact is a contract between the Pueblo and the State of New Mexico.  *Gallegos*, 2002-NMSC-012, ¶ 30.  "Generally, the goal of contract interpretation is to 'ascertain the intentions of the contracting parties.'"  *Id.* (internal quotation marks and citation omitted).  If a contract is unambiguous, this Court's role is to interpret the contract according to the intent of the contracting parties without manufacturing a new agreement.  *Gallegos*, 2002-NMSC-012, ¶ 30.  A contract is ambiguous only when it is "reasonably and fairly susceptible" to alternate constructions. *Lenscrafters, Inc. v. Kehoe*, 2012-NMSC-020, ¶ 18, 282 P.3d 758 (internal quotation marks and citation omitted).  Disagreement as to the construction of a contract is not definitive evidence of ambiguity.  *Id.*

**{21}**   Although Petitioners and Worker disagree as to the applicability of Section 4(B)(6), the language is unambiguous in that it does not confer jurisdiction on the WCA.  In arriving at this conclusion, we rely on the language in Section 4(B)(6), which states the Pueblo is required to provide

> all employees of the Gaming Enterprise . . . workers' compensation insurance through participation in programs offering benefits at least as favorable as those provided by comparable State programs, and which programs . . . shall include an effective means for an employee to appeal an adverse determination . . . to an impartial forum, such as (but not limited to) the Tribe's Tribal Court, which appeal shall be decided in a timely manner and in an administrative or judicial proceeding and as to which no defense of tribal sovereign immunity would be available[.]

NMSA 1978, § 11-13-app. (2015), Section 4(B)(6) explicitly states that "no defense of tribal sovereign immunity would be available" in appeals for adverse determinations of workers' compensation claims, which are to be in an impartial forum—with no explicit mention of the WCA as a potential forum.  Section 4(B)(6) goes on to state "that to fulfill this requirement [of implementing a workers' compensation program] the Tribe may elect to participate in the State's program upon execution of an appropriate agreement with the State[.]"  Although some language within Section 4(B)(6) may be ambiguous, there is no ambiguity as to whether the tribe has authorized jurisdiction shifting to the State within this section.  The only mention of the State in Section 4(B)(6), other than in

reference to comparable programs, is that the Pueblo *may elect* to participate in the State's worker's compensation program "upon execution of an appropriate agreement." There is no evidence in the record that such an agreement exists.

**{22}** Even assuming Section 4(B)(6) were ambiguous, our interpretation would be construed in favor of the Pueblo. *See Montana v. Blackfeet Tribe of Indians*, 471 U.S. 759, 766 (1985) ("[S]tatutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit[.]"). Thus, we resolve any perceived ambiguity by concluding that Section 4(B)(6) contains no express and unequivocal waiver of tribal sovereign immunity.

**{23}** In an attempt to clarify that the added language in Section 4(B)(6) does not waive immunity as to jurisdiction, Petitioners direct us to Section 8(D) of the Compact, which is a specific choice of law provision within the Protection of Visitors section of the Compact that applies to visitors' tort claims. NMSA 1978, § 11-13-app. (2015). This section provides that the Pueblo,

> by entering into this Compact and agreeing to the provisions of this Section, *waives its defense of sovereign immunity in connection with any claims for compensatory damages* for bodily injury or property damage up to the amount of ten million dollars ($10,000,000) per occurrence, asserted as provided in this Section. *This is a limited waiver and does not waive the Tribe's immunity from suit for any other purpose.* The Tribe shall ensure that a policy of insurance that it acquires to fulfill the requirements of this Section shall include a provision under which the insurer agrees not to assert the defense of sovereign immunity on behalf of the insured, up to the limits of liability set forth in this Paragraph. The Tribe and the State agree that *in any claim brought under the provisions of this Section, New Mexico law shall govern if the claimant pursues the claim in State Court, and the tribal law of the forum shall apply if the claim is brought in Tribal Court.*

*Id.* (emphasis added). By including a waiver of immunity and choice of law section for tort claims in Section 8(D), Petitioners assert that Section 4(B)(6) is intentionally distinguishable. Workers' compensation is neither included in this choice of law section, nor does Section 4(B)(6) contain its own choice of law section, which Petitioner's argue as indicative that jurisdiction shifting was never intended for workers' compensation claims. We agree.

**{24}** Petitioners raise a valid argument that if the Compact intended to provide a choice of law as to workers' compensation within the Compact, that specific language would be included within the workers' compensation section. *See Smith v. Tinley*, 1984-NMSC-011, ¶ 4, 100 N.M. 663, 674 P.2d 1123 ("In construing the terms of a written agreement, the document is considered as a whole with each part accorded significance and meaning according to its place in the agreement."). In considering the Compact as a whole, it would be discordant to apply an implicit choice of law provision

to one section when an explicit, unambiguous choice of law provision is written into another section.

**{25}** We do not dispute the WCA mediator's finding that the Pueblo does not appear to have an operative workers' compensation program in place; however, we dispute that this deficiency permits the WCA to exercise jurisdiction over Worker's claim. Such a determination would effectively operate as an implicit waiver of immunity, which is contrary to established precedent. *See Santa Clara Pueblo*, 436 U.S. at 58 ("It is settled that a waiver of sovereign immunity cannot be implied but must be unequivocally expressed." (internal quotation marks and citations omitted)).

**{26}** Accordingly, we reverse the Court of Appeals' holding that the Compact contains an express and unequivocal waiver of the Pueblo's sovereign immunity that permits Worker to pursue her claim in the WCA. Because no waiver exists, we need not consider Petitioners' arguments as to whether such a waiver is permitted in Compact negotiations pursuant to IGRA. We next turn to whether Worker can pursue a private right of action to enforce Compact compliance.

**B.     Worker is Unable to Pursue a Private Right of Action to Challenge the Pueblo's Compliance with the Compact**

**{27}** Petitioners assert that the Compact does not allow Worker to pursue a private party action for enforcement. A dispute resolution mechanism exists; however, they argue that mechanism is intended for the parties to the Compact—not Worker. Worker denies that she seeks a determination as to whether the Pueblo complied with the terms of the Compact. Rather, she states that she seeks to enforce rights that she claims are afforded to her pursuant to Section 4(B)(6).

**{28}** Not only is Worker, as a non-party to the contract, prevented from enforcing Compact compliance, the WCA cannot adjudicate such a dispute. No private right of action exists to enforce the terms of the Compact. *See Antonio v. Inn of the Mountain Gods Resort*, 2010-NMCA-077, ¶ 18, 148 N.M. 858, 242 P.3d 425 ("[E]ven if, as Worker argues, the Tribe did not have a workers' compensation program in place when he was injured, the Compact still does not provide a private right of action."). "Gaming compacts are contracts between two parties [the Pueblo and the State], and we treat them as such." *R & R Deli, Inc.*, 2006-NMCA-020, ¶ 20.

**{29}** Furthermore, the WCA cannot adjudicate disputes related to the Compact. *See Jones v. Holiday Inn Express*, 2014-NMCA-082, ¶ 13, 331 P.3d 992 ("The express terms of the Administration Act limit the WCA to resolving disputes that arise under the Compensation Act."); *see, e.g.*, *id.* ¶ 15 ("By its terms, a dispute between insurers is simply not the type of claim the Compensation Act covers since it does not involve or affect a worker's claim for compensation. It is not enough that this dispute between insurers generally relates to a workers' compensation claim. This case contemplates complex legal issues that the WCA was simply not designed to adjudicate."). Worker has no remedy against the Pueblo regarding its performance under the Compact. *See*

*Antonio*, 2010-NMCA-077, ¶ 14 ("There is a difference between the right to demand compliance with state laws and the means available to enforce them.").

**{30}**     Worker's argument that she can demand compliance with the Compact is unavailing.  Section 4(B)(6) outlines the specifications that shall be included in the Pueblo's workers' compensation program—it is not the mechanics of the program itself.  Worker cannot pursue an action as to a provision that is simply an agreement between the State and the Pueblo that a program will be created.  The State and the Pueblo are the only two parties who can challenge compliance.  Concluding that there is no private right of action, we then determine whether the Pueblo is an indispensable party to Worker's claim.

**{31}**     In that vein, if Isleta Casino is neglecting to provide workers' compensation coverage to its employees, as mandated by the Compact, the New Mexico Attorney General's office does have authority to intervene and challenge the Pueblo's noncompliance.  It is concerning that employees such as Worker have no redress for work-related injuries suffered at Isleta Casino, and the Attorney General's office has seemingly overlooked this deficiency, leaving New Mexico residents who choose to work for Isleta Casino without a remedy.

**C.     The Pueblo is an Indispensable Party to an Action Against its Insurer, Mandating Dismissal of Worker's Claim**

**{32}**     The Pueblo is an indispensable party to an action against its insurer because its interests could be affected absent its joinder, and sovereign immunity protects the Pueblo from litigating in state court.  Therefore, we reverse the Court of Appeals' holding that the Pueblo is not indispensable, and we rely on *Gallegos* to guide our analysis.

**{33}**     Rule 1-019 NMRA outlines a three-part analysis to determine if a party is indispensable for just adjudication of a case.  *Gallegos*, 2002-NMSC-012, ¶ 39.  It requires us to consider "(1) whether a party is necessary to the litigation; (2) whether a necessary party can be joined; and (3) whether the litigation can proceed if a necessary party cannot be joined."  *Little v. Gill*, 2003-NMCA-103, ¶ 4, 134 N.M. 321, 76 P.3d 639 (citing *Gallegos*, 2002-NMSC-012, ¶ 39).  If a necessary party cannot be joined and the court determines the case should not proceed "in equity and good conscience" without the necessary party, that party is deemed indispensable.  *Gallegos*, 2002-NMSC-012, ¶ 39 (citing Rule 1-019(B)).  If a party is deemed indispensable, the case must be dismissed.  *Gallegos*, 2002-NMSC-012, ¶ 39.

**{34}**     Petitioners argue that the Court of Appeals' holding conflicts with our holding in *Gallegos*.  In *Gallegos*, the plaintiff filed suit in district court over an injury that occurred at a casino on the Pueblo of Tesuque.  *Id.* ¶ 3.  The plaintiff named the Pueblo, among other defendants, in the complaint.  *Id.* ¶ 4.  The district court dismissed the complaint as to the Pueblo because the Pueblo had not waived its sovereign immunity.  *Id.*  The

complaint was dismissed without prejudice as to the other defendants, preserving the plaintiff's right to file an amended complaint. *Id.*

**{35}** The plaintiff subsequently filed an amended complaint solely against the insurer alleging breach of contract, insurance bad faith, and unfair practices. *Id.* ¶ 5. The district court dismissed the complaint as to the insurer on the premise that the Pueblo was an indispensable party to the action who could not be joined. *Id.* On appeal, this Court found that because the plaintiff's claims against the insurer involved interpretation of the duties under the insurance contract between the insurer and the Pueblo, the Pueblo was an indispensable party to the action. *Id.* ¶¶ 43, 53 ("Indeed, [the plaintiff's] asserted causes of action inherently involve the examination of the policy and an examination of the relationship of the insurer-insured to determine any duty [the insurer] might have to [the plaintiff], and [the Pueblo's] role, if any, in the fulfillment of that duty."). Essentially, because the interests of the insurer and the Pueblo were not identical, the action could not proceed without the Pueblo. *Id.* ¶ 45 ("Here, however, because [the plaintiff] is suing [the insurer] for alleged violation of its duties as [the Pueblo's] insurer, we will not presume that [the insurer] can or will fully represent the interests of [the Pueblo] under the policy, and thus, [the Pueblo] is necessary to the litigation."). Not only were the Pueblo's and its insurer's interests at odds, but this Court did not permit the action to proceed when nonjoinder was premised on the Pueblo's sovereign status. *Id.* ¶ 47 ("Most compelling, however, is that the party in question in this case is a tribe.").

**{36}** Petitioners' argument in favor of indispensability relies on the language in *Gallegos* stating that "a tribal entity has an interest in protecting its tribal resources and controlling their dissipation and allocation under its insurance contract." *See id.* Petitioners also argue that according to *Gallegos*, Isleta Casino has a "compelling interest in protecting its sovereign right to litigate on its own behalf and in the forum of its choice." *See id.* (internal quotation marks and citation omitted). Not only do Petitioners argue that the Court of Appeals' opinion conflicts with *Gallegos*, but they claim that the opinion's application essentially exposes the Pueblo, through the purchase of non-tribal insurance, to state court jurisdiction. The deficient record in this case coupled with the Pueblo's sovereign status compels us to agree.

**{37}** Although we find merit with Worker's argument that the Pueblo's interests are seemingly identical to those of its insurer because no bad faith claims have been raised, we disagree that the analysis ends there. We also disagree with the Court of Appeals that *Gallegos* is not controlling because this case involves a statutory workers' compensation claim. Such a finding requires us to ignore the jurisdictional deficiencies of Worker's claim being litigated in the WCA. As discussed above, the Compact does not permit jurisdiction shifting for workers' compensation claims. Thus, we must determine whether the Pueblo is a necessary and indispensable party to Worker's claim.

**{38}** Applying the three-part Rule 1-019 analysis, we first determine if the Pueblo is a necessary party to the action. The Pueblo is deemed necessary if its economic

interests might somehow be implicated. *See Golden Oil Co. v. Chace Oil Co.*, 2000-NMCA-005, ¶ 11, 128 N.M. 526, 994 P.2d 772. However, even if the Pueblo is necessary, its interests may not be impeded if they are truly identical to those of its insurers. *See id.* ¶ 13 ("We simply note that the interests of a necessary party will necessarily be impaired and impeded when a trial court rules in its absence, unless the interests of the absentee and one of the extant parties are truly identical."); *see also Little*, 2003-NMCA-103, ¶ 16 ("Under Rule 1-019(A)(2)(a), if the interests of a necessary party and another in the litigation are truly identical, the interests of the necessary party would not be impaired if the litigation continues without the party."). Here, however, we are left to speculate about the extent to which the Pueblo's interests could be impeded because of the scant record. Therefore, we presume that the Pueblo's interests could potentially be affected. *See Gallegos*, 2002 NMSC-012, ¶ 43 (stating that the "propriety or impropriety" of the insurer's conduct was considered to be of "substantial interest" to the Pueblo, who paid for a policy and had a reasonable expectation of coverage). Although the interests of the Pueblo and its insurer appear identical at this time, as they are represented by the same attorneys who advance their arguments as a single entity, their interests could quickly diverge if the claim were to proceed. Thus, we hold that the Pueblo is a necessary party to Worker's claim and should be joined if possible.

**{39}** However, here, because the Pueblo is protected by sovereign immunity, its joinder is not feasible. *See Srader v. Verant*, 1998-NMSC-025, ¶ 31, 125 N.M. 521, 964 P.2d 82 (explaining that joinder is unfeasible in an action where sovereign immunity is a jurisdictional barrier). Deeming joinder impossible, we next determine if the Pueblo is an indispensable party to the action, necessitating dismissal of Worker's claim.

**{40}** We consider four factors in determining whether the action should continue in equity and good conscience absent the Pueblo's joinder: (1) the extent of prejudice to the Pueblo or remaining parties if a judgment is rendered in its absence, (2) the extent the prejudice can be alleviated through protective provisions in the judgment, (3) if a judgment rendered absent the Pueblo will be adequate, and (4) whether Worker will have a remedy if the action is dismissed for nonjoinder. *See Golden Oil Co.*, 2000-NMCA-005, ¶ 16 (citing Rule 1-019(B)).

**{41}** First, we consider the extent to which the Pueblo or remaining parties might be prejudiced if the claim were to proceed absent the Pueblo's joinder, which is equivalent to the Rule 1-019(A) interest analysis. *Srader*, 1998-NMSC-025, ¶ 31. Generally, "in an action to void or set aside a contract[,] . . . the parties to the contract are indispensable to the litigation." *Gallegos*, 2002-NMSC-012, ¶ 43. An insurance policy, such as Isleta Casino's workers' compensation policy with Insurer, is a contract between an employer and its insurer. *See id.* Because the insurance contract is not contained in the record, we are unable to determine the extent of the prejudice to the Pueblo or remaining parties should the action proceed. Therefore, we presume the Pueblo may be prejudiced if it were not joined in the action. *See id.* ¶ 50 (concluding that, as a party to the contract with its insurer, the tribe may be prejudiced if not joined in the action).

**{42}** Second, any protective provisions in a judgment or shaping of relief would not protect the sovereign interests of the Pueblo in litigating on its own behalf. *See id.* ¶ 47. We note, however, that such prejudice is minimal due to the particularities of Worker's claim. Worker's requested relief is coverage of her claim by Isleta Casino's insurer, which is the exact purpose for which Isleta Casino has already paid premiums. *See Archer v. Roadrunner Trucking Inc.*, 1997-NMSC-003, ¶ 7, 122 N.M. 703, 930 P.2d 1155 ("The Act may be seen as a social contract between employer and employee in which the former agrees to pay under a no-fault system and the latter agrees to pursue only those benefits provided for under the Act."). Worker is neither seeking anything directly against the Pueblo, nor anything above the benefits provided under the workers' compensation coverage. *See Delgado v. Phelps Dodge Chino, Inc.*, 2001-NMSC-034, ¶ 12, 131 N.M. 272, 34 P.3d 1148 (stating that the employee is not required to prove fault on behalf of the employer in exchange for not seeking benefits beyond what workers' compensation coverage provides). Additionally, this reasoning applies to the third factor, as the Pueblo's presence is not necessary to adjudicate a workers' compensation claim since liability is not at issue. However, this particular determination is not dispositive in our decision, and we have to consider whether in "equity and good conscience" the action should proceed if dismissal leaves Worker with no remedy. *See* Rule 1-019(B).

**{43}** Finally, considering the fourth factor, if Worker's action is dismissed for nonjoinder, she will likely have no remedy. As to this element, we give deference to tribes, as a party's lack of remedy does not prevail over a tribe's right to protect its sovereign interests. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 118-19 (1968) ("The decision whether to dismiss (i.e., the decision whether the person missing is 'indispensable') must be based on factors varying with the different cases, some such factors being substantive, some procedural, [and] some *compelling by themselves*[.]" (emphasis added)); *see also White v. Univ. of Cal.*, 765 F.3d 1010, 1028 (9th Cir. 2014) ("[V]irtually all the cases to consider the question appear to dismiss under Rule 19, regardless of whether a remedy is available, if the absent parties are Indian tribes invested with sovereign immunity." (internal quotation marks and citations omitted)); *Enter. Mgmt. Consultants, Inc. v. United States ex rel. Hodel*, 883 F.2d 890, 894 (10th Cir. 1989) ("When . . . a necessary party under Rule 19(a) is immune from suit, there is very little room for balancing of other factors set out in Rule 19(b), because immunity may be viewed as one of those interests compelling by themselves." (internal quotation marks and citations omitted)); *Srader*, 1998-NMSC-025, ¶ 32 ("As a matter of public policy, the public interest in protecting tribal sovereign immunity surpasses a plaintiff's interest in having an available forum for suit."). We cannot ignore "the fact that society has consciously opted to shield Indian tribes from suit without congressional or tribal consent." *Gallegos*, 2002-NMSC-012, ¶ 51 (internal quotation marks and citations omitted).

**{44}** We hold that the Pueblo is an indispensable party to Worker's claim, thus mandating dismissal. Our holding is confined to the specific facts before us in this case. Our conclusion is predicated on both the Pueblo's sovereign status and a deficient record, leaving us with no means to make a tangible determination of prejudice.

Precedent demands that sovereign immunity prevails when determining indispensability, especially when the record does not definitely support an alternate conclusion. We caution parties, such as an insurer, against adopting a presumption that a tribe's involvement in a case will always necessitate dismissal.

**{45}** Finally, we must address the Court of Appeals' use of certain persuasive authority in its opinion below. To further bolster its conclusion that the Pueblo is an indispensable party, the Court of Appeals relied upon *Waltrip v. Osage Million Dollar Elm Casino*, 2012 OK 65, 290 P.3d 741, and the fact that Worker is an intended third-party beneficiary. *See Mendoza*, 2018-NMCA-038, ¶ 44. While we agree with the Court of Appeals' conclusion that Worker is a third-party beneficiary to the insurance policy, *see Hovet v. Allstate Insurance Company*, 2004-NMSC-010, ¶¶ 16-17, 135 N.M. 397, 89 P.3d 69. However, the Court of Appeals' comparison of Oklahoma's estoppel statute to NMSA 1978, Section 52-1-4(C) (1990) is an inapposite approach to confer third-party beneficiary status and does not provide a path for Worker to proceed against Isleta Casino's insurers.

**{46}** Section 52-1-4(C) provides that

> [e]very contract or policy insuring against liability for workers' compensation benefits or certificate filed under the provisions of this section shall provide that the insurance carrier or the employer shall be directly and primarily liable to the worker and, in event of his death, his dependents, to pay the compensation and other workers' compensation benefits for which the employer is liable.

"The rationale is straightforward: to make sure that injured workers or their dependents will be able to collect the benefits due to them even if the employer goes out of business or becomes bankrupt." *Peterson v. Wells Fargo Armored Servs. Corp.*, 2000-NMCA-043, ¶ 12, 129 N.M. 158, 3 P.3d 135.

**{47}** In *Waltrip*, the plaintiff was injured while working at a casino located on the Osage Nation, a federally recognized tribe. *Waltrip*, 2012 OK 65, ¶¶ 2-3. Following the injury, the plaintiff filed a claim in the Oklahoma state workers' compensation court, which the tribe and the insurer moved to dismiss claiming sovereign immunity. *Id.* ¶ 4. The workers' compensation court dismissed the claims against all parties, and the plaintiff appealed. *Id.* On appeal, the Supreme Court of Oklahoma referenced an estoppel statute within the Oklahoma workers' compensation statutory scheme. *Id.* ¶ 7. The purpose of the Oklahoma estoppel act is to "prevent those who insure employers against liability under the Workers' Compensation Act from denying coverage based on the status of the parties." *Id.* When an insurer collects premiums that are calculated based on an employee's wage, the employer and insurer are estopped from denying coverage to that employee. *Id.* Essentially, the estoppel act prevents an insurer from denying liability for benefits owed to an employee under compensation law. *Id.*

**{48}** No such estoppel statute exists in the New Mexico workers' compensation statutory scheme, and even if it did, application of such a statute in this case presumptively assumes that the Pueblo intended to adjudicate workers' compensation claims within the state program. Again, there is nothing in the record to support the argument that the Pueblo executed "an appropriate agreement with the State" to submit to the WCA. NMSA 1978, § 11-13-app. (2015).

**{49}** Although we agree that the certificate of insurance effectively conferred third-party beneficiary status on Worker, determining that Worker is an intended third-party beneficiary to Isleta Casino's workers' compensation insurance policy does not then permit her to pursue her claim absent joinder of an indispensable party. As the Pueblo is an indispensable party who cannot be joined, Worker's claim must be dismissed as to all parties. Thus, we reverse the Court of Appeals' holding that Worker may proceed as a third-party beneficiary.

## IV.    CONCLUSION

**{50}** Based on the foregoing, we reverse the Court of Appeals and conclude that (1) the Compact contains no express and unequivocal waiver as to the Pueblo's sovereign immunity; (2) as a non-contracting party, Worker cannot pursue a private right of action to enforce Compact compliance; and (3) the Pueblo is an indispensable party to Worker's claim, and therefore, the action must be dismissed in its entirety.

**{51}    IT IS SO ORDERED.**

**C. SHANNON BACON, Justice**

**WE CONCUR:**

**JUDITH K. NAKAMURA, Chief Justice**

**BARBARA J. VIGIL, Justice**

**DAVID K. THOMSON, Justice**

**ABIGAIL P. ARAGON, Judge**
**Sitting by designation**